820 F.2d 1459
 CLAYTON BROKERAGE CO. OF ST. LOUIS, INC. and David I. Brown,
Petitioners,
v.
Arthur BUNZEL, M.D., Individually and as Trustee of the
Arthur Bunzel Pension Plan Trust and the Commodity
Futures Trading Commission, Respondents.
 No. 85-7463.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 2, 1986.
Submission Withdrawn Dec. 30, 1986.
Resubmitted June 5, 1987.
Decided June 30, 1987.
 
 Kenton E. Knickmeyer, St. Louis, Mo., for petitioners.
 Daniel S. Goodman, Washington, D.C., Raymond J. Ikola and Richard A. Derevan, Newport Beach, Cal., for respondents.
 Petition for Review of a Decision of the Commodity Futures Trading Commission.
 Before WALLACE, SNEED and SCHROEDER, Circuit Judges.
 WALLACE, Circuit Judge:
 
 
 1
 Clayton Brokerage Co. of St. Louis, Inc. (Clayton) petitions for review of a reparation order issued by the Commodity Futures Trading Commission (the Commission) in favor of Bunzel. We dismiss the petition for lack of jurisdiction.
 
 
 2
 * Bunzel opened two commodity futures trading accounts with Clayton. Trading in both accounts resulted in losses. Bunzel filed a reparations complaint with the Commission on November 3, 1980, alleging that Clayton had breached an agreement to limit losses and had made unauthorized trades. After a formal hearing, an administrative law judge (ALJ) found that Clayton had violated section 4b(A) of the Commodity Exchange Act, 7 U.S.C. Sec. 6b(A), and awarded Bunzel reparations of $55,903.50 plus prejudgment interest and costs.
 
 
 3
 Clayton applied to the Commission for review of the ALJ's decision. On August 6, 1985, the Commission filed its order denying review, and stated that "the initial decision shall become final with respect to the parties upon service of this Order." Clayton filed a timely petition for review with this court on August 21, 1985. On September 6, 1985, Clayton filed a bond with this court. Bunzel and the Commission moved to dismiss the petition for review on the ground that the bond was not timely filed. Clayton denied that the filing was untimely and moved for discovery to assist it in establishing the facts necessary to sustain its position.
 
 
 4
 When reviewing the Commission's decision, we "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. Sec. 706. We recognize, however, that "the construction of a statute by those charged with its administration is entitled to great deference." United States v. Clark, 454 U.S. 555, 565, 102 S.Ct. 805, 811, 70 L.Ed.2d 768 (1982). Moreover, "the findings of the Commission as to the facts, if supported by the weight of evidence, shall ... be conclusive." 7 U.S.C. Sec. 9.
 
 II
 
 5
 The statute providing for judicial review of a Commission reparation order states that such "appeal shall not be effective unless within 30 days from and after the date of the reparation order the appellant also files with the clerk of the court a bond in double the amount of the reparation awarded." 7 U.S.C. Sec. 18(e). Our jurisdiction depends on compliance with this bond requirement and we must dismiss Clayton's appeal if it did not file the bond in a timely manner. Chicago Commodities, Inc. v. CFTC, 811 F.2d 1262, 1263-64 (9th Cir.1987) (Chicago Commodities ). The parties agree that Clayton filed a bond on September 6, 1985. The parties do not agree, however, that this filing occurred "within 30 days from and after the date of the reparation order." 7 U.S.C. Sec. 18(e).
 
 A.
 
 6
 We must first interpret the phrase "date of the reparation order." Counsel for the Commission points out that at the end of the Commission's order denying review of the ALJ's decision, the phrase "Dated: August 6, 1985" appears next to the signature of the Secretary of the Commission. Counsel contends that this date is the date the Commission executed its reparation order, and that the date the Commission executed its reparation order is the "date of the reparation order." If so, Clayton's bond, filed 31 days later, would not be timely. We need not determine whether we need to defer to such an interpretation of the statute by the Commission because this interpretation has not been adopted by the Commission but was merely suggested by counsel for the Commission on appeal.
 
 
 7
 We conclude that this argument is incorrect for two reasons. First, August 6, 1985, is the date of execution of the Commission's order denying review, not of execution of the reparation order itself. The reparation order in this case was executed March 30, 1984. Second, if we interpreted the "date of the reparation order" for purposes of section 18(e) to be the date of its original execution, Clayton would have had to file its bond within 30 days of March 30, 1984, over a year before it had any need to seek judicial review. Congress could not have intended this result.
 
 
 8
 It appears that what the Commission meant to argue was that the "date of the reparation order" was the date upon which the Commission's order denying review rendered the initial reparation order final, and that this is the date of execution of the order denying review, August 6, 1985. We agree that the "date of the reparation order" mentioned in 7 U.S.C. Sec. 18(e) must refer to the date when the initial reparation order is rendered "final." We observe that this interpretation comports with other Commission regulations which are keyed to the date an order becomes final, not to the date the order is first executed. See 17 C.F.R. Secs. 12.106(d) & (e), 12.406 (1986); 17 C.F.R. Sec. 12.95(e) (1983). This interpretation also avoids the manifestly absurd result of potentially requiring a party to file a bond with the court of appeals long before the Commission's own order becomes final.
 
 
 9
 Because Clayton applied for Commission review, the reparation order initially did "not become final ... pending Commission disposition of the application." 17 C.F.R. Sec. 12.84(e)(1) (1983). Rather, pursuant to Commission regulations, the ALJ's initial reparation order became "the final decision and order of the Commission" only after the Commission disposed of Clayton's application for review. See 17 C.F.R. Sec. 12.84(e) (1983) (The 1984 amendments to these regulations do not apply, in most respects, to reparation complaints filed before April 23, 1984, see 17 C.F.R. Sec. 12.1(c) (1984)). The date that this decision becomes effective, however, is the date specified in the "final order"--here, the order denying review. 17 C.F.R. Sec. 12.84 (1983). The Commission order denying application for review specified "that the initial decision shall become final with respect to the parties upon service of this Order on the parties by the Proceedings Clerk." Thus, the date of the reparation order in this case is the date that the order denying review was served.
 
 B.
 
 10
 Under current regulations, determining the date of service would be relatively simple. "In computing any period of time involving the date of service of an order, the date of service shall be the date the order is served by the Proceedings Clerk, which, unless otherwise indicated, shall be the date stamped on the order by the Proceedings Clerk." 17 C.F.R. Sec. 12.5(b) (1986). Under the earlier regulations applicable in this case, however, nothing so clearly provides a method for determining the date of service. We first determine what event signals that service has occurred; we then proceed to determine when this event occurred.
 
 1.
 
 11
 The Commission asserts that service is complete upon mailing, and Clayton argues that service is complete when a party receives actual notice. We recently held that 7 U.S.C. Sec. 18(e) does not require that a party receive actual notice before the 30 day bond filing period begins to run. See Chicago Commodities, 811 F.2d at 1263. Furthermore, we observe that section 12.48(b) of the Commission's regulations states that service by first-class mail shall be complete "upon deposit in the mails of a properly addressed and postpaid document." 17 C.F.R. Sec. 12.48(b) (1983). As we discuss later, we doubt that section 12.48(b) directly applies to the service of orders. But even if the Commission's regulations do not explicitly address the issue, we find that the Commission's understanding of service-by-mail procedures is sensible and accords with common practice. See, e.g., Fed.R.Civ.P. 5(b); Fed.R.App.P. 25(c). See generally 4 C. Wright & A. Miller, Federal Practice and Procedure: Civil Sec. 1148 (1969). We hold that, for actions governed by the 1983 regulations, service of a Commission order is complete when it is deposited in the mail in a properly addressed and postpaid envelope.
 
 2.
 
 12
 Next, we must determine when the Commission's order denying review was mailed. Clayton, as the party asserting this court's jurisdiction, has the burden of proving any historical facts necessary for jurisdiction. See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).
 
 
 13
 Because initially the record supplied only meager evidence regarding the date the order was mailed, we remanded the matter to the Commission for further fact-finding. The Commission filed its "Response to Remand Order" on February 25, 1987. Although Clayton has moved this court to allow further discovery, we believe that the Commission's inquiry was thorough and that its response to our remand order is candid and fairly represents all the facts. Accordingly, we deny Clayton's motion.
 
 
 14
 The Commission concluded that it is "likely that the order denying review was mailed on August 6, 1985." The most important findings upon which the Commission based this conclusion are the following. An employee of the Office of Proceedings prepared the order for mailing and placed it in the "out box" on August 6, 1985. Items placed in the out box before 4:30 p.m. were routinely picked up by a mailroom employee and deposited in the mail on the same day. About two out of five work days, however, letters would be placed in the out box after 4:30 p.m. When this occurred during the week, a paralegal would usually (about two out of three times) take any letters remaining in the out box and mail them. No one has any recollection as to whether the order in this case was placed in the out box before 4:30 p.m.
 
 
 15
 The Commission's findings and conclusions are well-supported by the record. It appears that the order was more probably than not mailed in the ordinary course on August 6, 1985. If not, the order was more probably than not mailed on August 6, 1985, by a Commission paralegal. We conclude, therefore, that the Commission's determination that the order was mailed August 6, 1985, was supported by the weight of the evidence and therefore cannot be overturned. See 7 U.S.C. Sec. 9.
 
 C.
 
 16
 The Commission's regulations provide that "[w]here a party effects service by mail, the time within which the person served may respond thereto shall be increased by three (3) days." 17 C.F.R. Sec. 12.48(b) (1983). Because the order denying review was served by mail, Clayton argues that section 12.48(b) enlarges by three days the time period for filing a bond with the court of appeals. If Clayton is correct that section 12.48(b) applies, then even if service occurred on August 6, a bond filed 31 days later, on September 6, would still be timely.
 
 
 17
 Section 12.48(b), however, does not on its face purport to apply to the service of orders. In fact, section 12.48(b) may be read as applying only to the service of those papers listed in section 12.48(a). This list includes "all pleadings, motions, petitions or applications made in the course of proceedings ... all proposed findings and conclusions, all petitions for review of any initial decision, and all briefs" filed with the Commission but does not include decisions or orders that the Commission issues. Furthermore, section 12.48(b) states that the three day extension applies "[w]here a party effects service by mail." 17 C.F.R. Sec. 12.48(b) (1983) (emphasis added). A party to a reparations proceeding is defined as "a complainant, respondent, and any other person or agency named or admitted as a party to a reparation proceeding." 17 C.F.R. Sec. 12.3(k) (1983). The Commission itself is not a "party."
 
 
 18
 We also observe that a different provision, section 12.49, is entitled "Service of decisions and orders." Section 12.49 merely requires that all orders be served but does not purport to enlarge, because an order was served by mail, the time for filing a bond in response to the order. The Commission's description of sections 12.48 and 12.49 when they were published in the Federal Register also suggests that section 12.48 does not apply to orders. The Commission stated that these rules "prescribe the procedure to be followed with respect to the service of motions, petitions and applications (Sec. 12.48) and of decisions and orders made in the course of the proceeding (Sec. 12.49)." 41 Fed.Reg. 3997 (1976).
 
 
 19
 Furthermore, the Commission contends that it could not have promulgated section 12.48(b) to enlarge the time for filing a bond because it is without power to extend the jurisdictional 30 day deadline provided in the statute. In response, Clayton argues that this power was within the scope of the Commission's rule-making authority found in 7 U.S.C. Sec. 18(b) (amended 1983). The rule-making authority that section 18(b) gives the Commission, however, is plainly limited in scope to "matters governing proceedings before the Commission." This statute clearly empowers the Commission to issue regulations regarding its own administrative appeals. But a rule that enlarges the time for filing a bond is not a rule that governs "proceedings before the Commission." After the Commission enters its final order, however, any subsequent appeal is a proceeding before the court of appeals. Section 18(b) does not authorize the Commission to issue rules that affect or determine proceedings before the court of appeals.
 
 
 20
 Section 18(e) unambiguously states that a bond must be filed within 30 days of the reparation order. The Commission could not, by rule, change this to 33 days. We hold, therefore, that 17 C.F.R. Sec. 12.48(b) (1983) does not enlarge the time for filing a bond with the court of appeals.
 
 III
 
 21
 The 30 day time period for filing Clayton's appeal bond began on the date the reparation order became final. The order became final when the Commission served the order denying review. Service was effective and complete upon mailing, which occurred August 6, 1985. Although the Commission served the order by mail, the bond filing period was not enlarged. The bond, filed 31 days later, was untimely. Therefore, we do not have jurisdiction to review the Commission's reparation order.
 
 
 22
 PETITION DISMISSED.