UNITED STATES of America, Plaintiff–Appellee,

v.

Kendrick Albert CICERO, A/K/A Kenny, A/K/A Diamond, A/K/A Paul Haynes, a/k/a Albert Kenrich Cicero, Defendant–Appellant.

No. 92–3222.

United States Court of Appeals, District of Columbia Circuit.

Argued April 7, 1994.

Decided May 10, 1994.

---

Howard F. Bramson (appointed by the Court), argued the cause and filed the brief for appellant.

James A. Meade, Asst. U.S. Atty., argued the cause for appellee. With him on the briefs were J. Ramsey Johnson, U.S. Atty. at the time the briefs were filed, and John R. Fisher, Roy W. McLeese, III, and Robert T. Swanson, Asst. U.S. Attys.

Before WALD, EDWARDS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

Opinion concurring in part and concurring in the result filed by Circuit Judge SENTELLE.

WALD, Circuit Judge:

Appellant Kendrick Cicero was convicted after a jury trial of one count of conspiring to distribute cocaine, in violation of 18 U.S.C. § 2 (1988) and 21 U.S.C. § 841(a)(1) (1988), and five counts of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (1988). On appeal, Cicero challenges the district court's "on or about" jury instruction with respect to two of the five counts of possession with intent to distribute. He also argues that the district court erred by admitting into evidence telephone numbers that were given to the District of Columbia Pretrial Services Agency by two of his alleged accomplices. Because we find that the district court's refusal to modify the "on or about" instruction was harmless error and because the phone numbers are a matter of public record and fall within the business record exception to the hearsay rule, we affirm appellant's conviction.

## I. BACKGROUND

The chain of events leading to appellant's arrest began on March 15, 1991, when the government arrested Sandra Neal and found drugs, drug paraphernalia, a gun, and over $1,000 in her apartment at 471 Orange Street, S.E. Neal agreed to become a government informant, and told officers of the Metropolitan Police Department that Cicero was selling cocaine from an apartment at 525 Mellon Street, S.E. On October 17, 1991, police officers broke down the door of the Mellon Street apartment and found Cicero and Alexander Rubinstein in the bedroom. Cicero was sitting on a bed with his coat next to him. Inside the coat, the police found a wallet and 77 small ziplock bags of crack cocaine. The wallet contained picture identification and a business card, which had two telephone numbers written on the back, with "Sandy" written next to one number and "Alex" written next to the other. Over the objection of defense counsel, the trial court permitted the admission into evidence of two D.C. Pretrial Services Agency reports which indicated that the numbers provided to the agency by Rubinstein and Neal at the time of their arrests matched the numbers written on the back of the business card. The police officers arrested both Cicero and Rubinstein. On Rubinstein, they found an Amtrak ticket stub dated September 27, 1991 for travel from New York City to Washington, D.C.

After his arrest, Rubinstein agreed to cooperate with the government. Rubinstein generally remembered transporting drugs for appellant from New York to Washington, D.C. approximately ten times and specifically recalled having been a courier for Cicero on the date of their arrest and on four other occasions in the two months prior to the arrest. Three of these other four trips formed a basis for separate counts in the indictment against appellant—September 13, 1991 (Count Three), September 27, 1991 (Count Four), and October 9, 1991 (Count Five). Only the September 13th and the October 9th trips are at issue in this appeal.

At trial, Rubinstein testified that he transported cocaine into Washington, D.C. for Cicero on September 13, 1991. Rubinstein explained that he went to Cicero's house in New York late in the afternoon of September 12th and that Cicero gave him the drugs, along with money for train fare. Rubinstein stated that he arrived by train in Washington at approximately 12:30 a.m. on the 13th, delivered the drugs to Cicero, and stayed with Cicero until between 1:00 p.m. and 3:00 p.m., when Rubinstein left to go back to New York. Rubinstein was able to remember that this trip occurred on the 13th because "it was two weeks prior to [the September 27th trip]," for which the train stub verified the date. As to the October 9th excursion, Rubinstein recalled the date because he remembered making a trip a week prior to his arrest on October 17th. Rubinstein testified that on October 9, 1991, Cicero gave him the drugs at Cicero's house in New York between 5:00 p.m. and 6:00 p.m. Again, Rubinstein took the train to Washington, D.C.,

where he met Cicero and then went to the apartment at 525 Mellon Street. According to Rubinstein, he and Cicero arrived at the apartment between midnight and 1:00 a.m. on October 10, 1991. Rubinstein stayed with Cicero in D.C. for approximately three days before they both returned to New York.

Cicero countered Rubinstein's testimony as to the September 13th and October 9th offenses with an alibi defense, arguing that he could not have been in Washington on these dates. As evidence, Cicero pointed out that he signed the log book at his daughter's day care center in New York on September 13th and on the mornings of October 8th and 10th. The director of the day care center testified that the log book is used to keep track of children entering and leaving the center between 8:00 a.m. and 5:45 p.m., but sometimes parents may sign in and not sign out. The log book indicated that at 8:30 a.m. on September 13, 1991, the mother of appellant's daughter signed in and that later in the day, appellant signed the same page of the book but did not list the time. In addition, the log book demonstrated that on October 8th, and again on October 10th, Cicero signed his daughter in to the day care center, and that on October 9, 1991 he signed her out, all at unspecified times. A handwriting expert testified that the handwriting in the log book matched that of appellant, but the director of the center had not seen Cicero sign in or out on any of the dates at issue.

At the end of the trial, defense counsel admitted that the "on or about" jury instruction[1] "of course, is correct, in this case" but requested that the court include an "addendum" to the instruction:

> Because without it, even though Mr. Rubinstein is the only witness who swore that he was positive of the dates of September 13 and October 9 . . . [the "on or about"] instruction . . . would, I believe, impermissibly allow the jury to say, "Well, maybe he was down on the 7th or maybe he was down on the 15th. The Judge said that if it's close enough, we can find him guilty." My defense was based on the government's, responding to the government's case, and the government's case made specific reference to specific dates.

Trial Tr. IV at 51 (Apr. 16, 1992). Defense counsel suggested an addendum along the following lines:

> In this case, there was testimony offered that the defendant committed criminal acts. . . . [W]hen the testimony from a witness is to a date specific, you should consider that testimony in arriving at your verdict.

*Id.* Although the reasons defense counsel gave for requesting the addendum were less than completely precise, he was clearly concerned that because the alibi defense responded to the specific dates on which the government focused both in the indictment and at trial, the district court should guide the jury on reconciling the deliberate generality of the "on or about" instruction with the attempt of an alibi defense to pinpoint those specific dates.[2] The district court at first agreed that the "on or about" instruction should be amended to read:

> place where, this offense was allegedly committed. The defendant may not be convicted of the offense with which s/he is charged unless the government proves beyond a reasonable doubt that the defendant was present at the time when, and at the place where, the offense allegedly was committed.
> If, after a full and fair consideration of all the facts and circumstances in evidence, you find that the government has failed to prove beyond a reasonable doubt that the defendant was present at the time when, and the place where, the offense charged was allegedly committed, you must find the defendant not guilty.
> Redbook Instruction 5.02.

---

1. The typical "on or about" jury instruction reads:
   > You will note that the indictment charges that the offense[s] [were] committed "on or about" (date of offense(s)) . The proof need not establish with certainty the exact date of the alleged offense[s]. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense[s] [was] [were] committed on a date reasonably near the date alleged.
   
   Criminal Jury Instructions: District of Columbia (4th ed. 1993) ("Redbook Instructions"), Instruction 3.07.

2. The standard "alibi" instruction reads:
   > Evidence has been introduced that the defendant was not present at the time when, and the

"However, the government's witnesses have testified to dates that they assert on which the offenses occurred," [or] something like that ... just to tell them that the government did present evidence [of specific dates].

Trial Tr. IV at 53–54. After discussing Rubinstein's testimony regarding the September 13th and October 9th trips, however, the district court appeared to change its mind about the need for the addendum:

All right, based upon that review of the testimony, I'm going to deny the defendant's request and leave in that, because I don't think it's certain in his testimony, Mr. Rubinstein's, that those dates were the exact dates.... But I think that that's fair as to overall approach for the jury to use that instruction.

Id. at 55. Although the trial judge's statement is not crystal-clear on the point, it seems more than likely that in "deny[ing] defendant's request" the trial court was deciding that an addendum would eviscerate the "on or about" instruction, especially because defense counsel already had specifically agreed to the issuance of that instruction and had only requested an addendum. Such an interpretation is supported by the language of the actual "on or about" instruction given to the jury, which did not include any qualifying addendum. Immediately after the "on or about" jury instruction, the district court gave the standard "alibi" instruction. The jury returned verdicts of guilty on all six counts on April 16, 1992, and the next day Cicero was sentenced to six concurrent terms

of 240 months, a special assessment of $300, and a fine of $150,000.

## II. ANALYSIS

### A. "On or About" Jury Instruction

On appeal, Cicero contends that when the government offers some evidence that a crime was committed on a certain date and the defense presents contrary evidence of an alibi for that date, it is reversible error for the district court to give an "on or about" jury instruction.[3] The government responds that the issuance of an "on or about" instruction in conjunction with an alibi defense can only be inappropriate when the indictment or the government's proof points *exclusively* to particular dates, and that deciding whether such an instruction would be improper should be evaluated on a case-by-case basis. *See United States v. Neuroth*, 809 F.2d 339, 342 (6th Cir.) (en banc), *cert. denied*, 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987). Thus, while both parties agree that in certain cases the "on or about" instruction is incompatible with an alibi defense, they differ as to the circumstances in which the instruction should be avoided. We believe that, in order to circumvent the genuine risk of jury confusion, *cf.* concurring opinion at 1, the proper practice should be that if the defense reasonably contends that the government's proof focuses on one or more specific dates, and the defense presents an alibi for those dates, the jury should be given additional guidance in reconciling the parties' positions.[4] Rather than forbidding the trial court from issuing an "on or about" instruction in such instances, we suggest that an intermediate instruction should be provided,[5] directing jurors to

---

**3.** Appellant's argument on appeal differs from his objection before the district court. While appellant now asks us to label as erroneous the entire issuance of the "on or about" instruction, below he merely requested that, in light of the alibi defense, the district court amend the "on or about" instruction to give the jury guidance on the tension between the generality of such an instruction and the government's focus on specific dates at trial when an alibi defense has been offered for those specific dates. Nonetheless, because the request for an addendum was fully discussed at oral argument, we decline to penalize defense counsel for somewhat inartful briefing on appeal by refusing to consider the appropriateness of an amendment to the "on or about" instruction.

**4.** Of course it would be within the discretion of the trial judge to determine whether it reasonably could be argued that the government's proof focuses on a specific date. If, for example, the only evidence proffered by the government is witness testimony that an offense occurred "sometime" during a certain week, and the defense presents an alibi for just one day of that week, the district court would not be obligated to give an additional instruction.

**5.** Such a suggestion is well within our supervisory authority over the administration of criminal justice in the federal district courts. *See McNabb v. United States*, 318 U.S. 332, 341, 63 S.Ct. 608, 613, 87 L.Ed. 819 (1943); *cf. Law Offices of Seymour M. Chase, P.C. v. FCC*, 843 F.2d 517,

consider whether the government's proof has in fact focused on specific dates, and, if so, whether the defendant's alibi credibly addresses those dates.

Having heard all the evidence and arguments, the jury is in the best position to determine whether one of the parties is improperly describing the specificity of the evidence in a way that attempts to take advantage of the disjunction between the "on or about" and "alibi" instructions. If government witnesses present hard evidence as to a specific date, but government counsel aims to use the breadth of the "on or about" instruction to circumvent an alibi for that date, the jury can use the intermediate instruction to find that the alibi prevails and the "on or about" instruction is not applicable. Conversely, if the defense tries to characterize the dates in the government's evidence in an overly specific way, so that a narrow alibi can be used against the government's more general proof, the jury, pursuant to the intermediate instruction, can repudiate the defense's claim and rely on the "on or about" instruction to reject the alibi.

This case certainly qualifies as one in which it can be argued that the government's proof focused on specific dates and that the defense presented an alibi for those dates. Although the government modified the charges in counts three and five of the indictment with the "on or about" phrase, and the evidence did not *exclusively* point to either September 13, 1991 or October 9, 1991, Rubinstein repeatedly testified that he delivered the drugs to appellant in Washington on September 13th and that appellant gave him drugs in New York on October 9th. While the government plausibly argues that Rubinstein may have been "off by a day or two on both occasions," Government Brief at 17, the jury should be the one to decide whether the government's proof was such that the jury should accept the generality of the "on or about" instruction and reject the alibis presented. Consequently, we find that the district court erred by failing to give an inter-mediate instruction, particularly because defense counsel requested such an instruction at trial.

■ Our analysis does not end there, however. An error in a jury instruction does not require reversal if the error was harmless. *See Williams v. United States Elevator Corp.*, 920 F.2d 1019, 1022 (D.C.Cir.1990); *United States v. Lemire*, 720 F.2d 1327, 1339 n. 16 (D.C.Cir.1983), *cert. denied*, 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984). Indeed, "[w]here the indispensable prerequisites for a fair trial have been afforded, we will not overturn a conviction ... even because we would have sustained a defense objection that was overruled. Instead, we look at the *entire record* of the proceedings below and ignore errors that do not undermine confidence in the conviction when viewed in light of all that took place." *United States v. Yunis*, 924 F.2d 1086, 1096 (D.C.Cir.1991) (emphasis in original). Considering the record as a whole, we cannot believe that if the district court had given an intermediate instruction, the jury would have reached a different verdict on Counts Three and Five of the indictment. To begin with, the log book alibi evidence was far from ironclad. Although a handwriting expert verified the log entries, the absence both of specific times at which Cicero allegedly signed the log and of any witnesses who actually saw him sign the book severely weakened the log book evidence. Because the log book was kept in an unmonitored cubbyhole at the day care center and because the director of the center testified that sometimes parents did not sign out for their children, the jury could easily have found that appellant signed the book on dates other than September 13th and October 8th and 10th to create a false alibi. Moreover, as to Count Three (alleging possession with intent to distribute on or about September 13th), the log book evidence did not even provide an alibi. It would have been entirely possible and consistent with the log book entries

---

522 (D.C.Cir.1988) (per curiam) (noting close supervisory authority of federal appellate courts over district courts within circuit). While in this case a cryptic version of the suggested intermediate instruction was actually submitted by defense counsel, in the past we have gone so far as to recommend instructions for the district court proposed by neither party. *See, e.g., United States v. Jones*, 909 F.2d 533, 538–39 (D.C.Cir. 1990); *cf.* concurring opinion at 1164.

for Cicero to receive the drugs from Rubinstein in Washington at 12:30 a.m. on the 13th, spend the morning in Washington with Rubinstein, leave Washington at 1:00 p.m. by plane, and arrive in New York in time to sign his daughter out of day care in the late afternoon. In sum, we find that while the district court erred by refusing to give an addendum or modification to the "on or about" jury instruction, the error was harmless. *Accord United States v. Neuroth,* 809 F.2d 339, 342 (6th Cir.) (en banc), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987) (even when proof is directed to a specific date for which there is an alibi and there is alibi evidence as to that date "on or about" charge can be harmless error).

## B. *Admission of Telephone Numbers in Pretrial Services Agency Reports*

■ Cicero next argues that the district court erroneously admitted into evidence two D.C. Pretrial Services Agency reports which contained phone numbers given to the agency by Rubinstein and Neal at the time of their arrests. To support his claim, appellant relies in part on 18 U.S.C. § 3153(c) (1988), the federal statute governing the confidentiality of pretrial services information and its use in judicial proceedings. The government takes the position, however, that the operations of the D.C. Pretrial Services Agency are governed by D.C.Code §§ 23–1301 *et seq.* (Michie 1993), and not the provisions of 18 U.S.C. §§ 3152–3156 (1988). To determine which of the two statutes governs the agency, we examine the language and legislative history of each.

Congress created the predecessor to the D.C. Pretrial Services Agency, the D.C. Bail Agency, in 1966. *See* D.C.Code §§ 23–901 *et seq.* (1967). The Bail Agency was designed to "secure pertinent data" and to provide "verified [bail] information" to judicial officers in the District of Columbia. *See* D.C.Code § 23–901 (1967). At first, the Bail Agency's governing statute specified that information contained in the agency's files or in its reports was to be used solely for the purpose of a bail determination and was otherwise completely confidential. *See*

D.C.Code § 23–903(c) (1967). Later, in 1970, Congress amended the confidentiality provision, changing the system of blanket confidentiality to one in which information in the agency's files can be used for, *inter alia,* perjury proceedings or impeachment, but not to prove guilt in any judicial proceeding. *See* D.C.Code § 23–1303(d) (Michie 1993).

Building on the model of the D.C. Bail Agency, Congress decided to establish ten demonstration "pretrial services agencies" in ten federal districts in 1974. *See* 18 U.S.C. §§ 3152–3156 (Supp. V 1975). Congress explicitly provided that the ten federal districts should not include the District of Columbia. *See* 18 U.S.C. § 3152 (Supp. V 1975). In addition, the confidentiality restrictions for the ten pilot agencies differed from those governing the D.C. Bail Agency. *See* 18 U.S.C. § 3154 (Supp. V 1975). According to the legislative history of the federal confidentiality provision, Congress expressly decided to enact language different from that in D.C.Code § 23–1303(d):

The Committee has attempted to adopt a compromise between the language contained in the original confidentiality provision for the District of Columbia Bail Agency and the revision of that provision in 1970.

S.Rep.No. 1021, 93d Cong., 2d Sess. 52 (1974). Congress expressed no intent, however, to bring the D.C. Bail Agency within the purview of this compromise in confidentiality language, which by its terms applied to "pretrial services agenc[ies]." *See* 18 U.S.C. § 3154 (Supp. V 1975). Although Congress later changed the name of the D.C. Bail Agency to the D.C. Pretrial Services Agency, it expressed no intent to subject the D.C. agency to the statute governing the operation of the ten demonstration pretrial services agencies. *See* D.C. Code § 23–1309 (Michie 1993). Instead, Congress renamed the agency because it wanted to better describe the agency's functions, to eliminate public confusion regarding whether the Bail Agency performed bail bondsman services, and to make the name consistent with the ten pilot pretrial services agencies, which were serving the same functions. *See* S.Rep. No.

895, 95th Cong., 2d Sess. (1978); H.R.REP. No. 1368, 95th Cong., 2d Sess. (1978).

■ Due to the success of the demonstration program, Congress passed the Pretrial Services Act of 1982, 18 U.S.C. §§ 3152–3156 (1988), which establishes pretrial services agencies in "each federal district (other than the District of Columbia)." 18 U.S.C. § 3152(a) (1988). While the Pretrial Services Act of 1982 modifies the confidentiality provision of the 1974 statute, it nowhere indicates that this provision applies to the D.C. Pretrial Services Agency, which is already subject to the confidentiality requirements in § 23–1303(d) of the D.C. Code. Although the 1982 confidentiality provision, read alone, might seem to apply to the D.C. Pretrial Services Agency as a matter of course,[6] there is no evidence in the legislative history that Congress intended to affect the operations of the D.C. Pretrial Services Agency when it enacted the Pretrial Services Act of 1982. Specifically, there is no indication that Congress intended to supplant D.C. Code § 23–1303(d) in federal cases or that it intended 18 U.S.C. § 3153(c) to apply in conjunction with § 23–1303(d). *See generally* S.REP.No. 77, 97th Cong., 2d Sess. (1981) U.S. Code Cong. & Admin. News 1982, 2377. Therefore, in accordance with the familiar principle of statutory construction that even partial repeals by implication are disfavored, we conclude that the D.C. Pretrial Services Agency is exclusively subject to D.C. Code § 23–1303(d). *See Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1017, 104 S.Ct. 2862, 2880, 81 L.Ed.2d 815 (1984).

■ We turn now to whether the district court violated D.C. Code § 23–1303(d) by admitting into evidence the phone numbers which Neal and Rubinstein gave to the Pretrial Services Agency as their own. Section 23–1303(d) holds confidential "[a]ny information contained in the agency's files, presented in its report, or divulged during the course of any hearing." *See* D.C. Code § 23–1303(d). It does not, however, prevent the admission of information that is in the public record.

*See Haltiwanger v. United States,* 377 A.2d 1142, 1144 (D.C.App.1977). Thus, because the phone numbers were publicly available as part of the district court's files, they were not protected by § 23–1303(d).

■ Finally, Cicero urges us to find that the phone numbers were inadmissible hearsay because the pretrial services reports fail to fit within the business record exception to the hearsay rule. That exception allows the admission of a "data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the … data compilation." FED.R.EVID. 803(6) (1994). Appellant relies heavily on our recent decision in *United States v. Patrick,* 959 F.2d 991, 1000–01 (D.C.Cir.1992), in which we found that the district court erred by allowing the government to use a Circuit City receipt to prove the defendant's address. After concluding that the address was double hearsay because it embodied the assertions of both the Circuit City employee who made out the receipt and the customer who provided the address, we decided that in the absence of testimony that Circuit City's standard practice was to record and verify an address provided by a customer, the receipt did not fit within the business record exception. *Id.* at 1000–01. The pretrial services reports at issue in this case, by contrast, clearly qualify for the business records exception. First, the government showed that it is standard practice for the Pretrial Services Agency to record phone numbers given by defendants. Second, there is no double hearsay problem. The government introduced the pretrial services reports to establish that the phone numbers given out by Neal and Rubinstein matched those on the back of the business card; the government did not seek to prove that the telephone numbers were *actually* the telephone numbers of appellant's accomplices. Thus

---

**6.** 18 U.S.C. § 3153(c)(1) (1988) provides that, subject to certain specific exceptions, "information obtained in the course of performing pretrial services functions in relation to a particular ac- cused shall be used only for purposes of a bail determination and shall otherwise be confidential."

the district court properly admitted the reports under the business record exception.

## III. CONCLUSION

In sum, although the district court erred by refusing to issue an addendum to the "on or about" instruction, we find that the error was harmless. In addition, because the telephone numbers were a matter of public record and because it was a common practice for employees of the Pretrial Services Agency to record the telephone numbers of defendants, the district court properly admitted the numbers into evidence. Consequently, we affirm appellant's conviction.

*So ordered.*

SENTELLE, *Circuit Judge, concurring in part and concurring in the result:*

I agree with the majority that appellant's conviction should be affirmed. I do not agree that there was any error in the jury instructions, either harmless or otherwise. Jury instructions must be viewed "as a whole" and must pose a "genuine risk that the jury will be confused" in order to warrant reversal. *See, e.g., United States v. North,* 920 F.2d 940, 951 (D.C.Cir.1990). In this case the trial judge's standard and unassailable instruction on the "on or about" concept coupled with his express "alibi" instructions to the jury that "unless the government proves beyond a reasonable doubt that the defendant was present at the time when and at the place where the offense or offenses were allegedly committed," poses no risk of confusion at all. In fact, it appears to me that the kind of deliberation micromanagement contemplated by the specificity of instructions mandated in the majority opinion will yield instructions more likely to confuse than to clarify, and most likely of all to add to what must already be a stupefying overload for the attention span of jurors who did not sign up for a full legal education.

I do agree with the majority that "having heard all the evidence and arguments, the jury is in the best position to determine whether one of the parties is improperly describing specificity of the evidence in a way that attempts to take advantage of the disjunction between the 'on or about' and 'alibi' instruction." Op. at 1161. The district judge having given both and having left the jury to do that which it is in the best position to do, I do not understand the majority's insistence that the court committed error. I further do not understand the generalized dicta "suggest[ing] that an intermediate instruction should be provided," *id.,* in a generalized category of "instances," *id.,* is "well within our supervisory authority." Indeed, I think it beyond our role as an Article III court deciding "cases and controversies." U.S. CONST. art. III, § 2.

As to the other allegations of error outside the instructions, I am in agreement with the majority's reasoning. As I find no error, I would affirm.