UNITED STATES of America, Appellee,

v.

Jimmie Lee KENNEDY, a/k/a James Kornegay, Appellant.

No. 97–3009.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 20, 1997.

Decided Jan. 16, 1998.

Neal Goldfarb, Washington, DC, appointed by the court, argued the cause and filed the briefs for appellant.

Elizabeth H. Danello, Assistant U.S. Attorney, Washington, DC, argued the cause for appellee, with whom Mary Lou Leary, U.S. Attorney, and John R. Fisher, Assistant U.S. Attorney, were on the brief.

Before: EDWARDS, Chief Judge, HENDERSON and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Appellant Jimmie Lee Kennedy appeals from his conviction by a jury of robbery and weapons offenses on the grounds that the district court erred in imposing five life sentences. He contends that the robbery convictions under the Hobbs Act could not constitute the basis for life imprisonment, that the jury was incorrectly instructed as to the firearm possession count, that the government failed to comply with the statutory requirement that he be served prior to trial with a copy of the information filed in court that the government would seek a term of life imprisonment, and that his sentence for violating the felon-in-possession law was incorrectly assessed in light of the life sentences he received for one of the robberies. We conclude that the Hobbs Act contention is unpersuasive, and hold that the instructional error was harmless and that the district court did not clearly err in ruling that the government had met its burden to show service of the information, albeit just barely. However, we agree with appellant's contention regarding his sentence for being a felon in possession of a firearm and, accordingly, remand that count to the district court for resentencing; in all other respects we affirm the judgment of conviction.

## I.

Appellant and a man named Harrington robbed a Roy Rogers restaurant at 6514 Georgia Avenue, N.W., in Washington, D.C., on the evening of May 17, 1995, and again on the morning of June 25, 1995. *United States v. Harrington,* 108 F.3d 1460, 1463–64 (D.C.Cir.1997). On both occasions appellant

produced a handgun and ordered store employees to give him the money from the restaurant safe. During the second robbery, two uniformed police officers happened to be waiting in a marked Metropolitan Police Department car to place an order at the restaurant's drive-through window. The officers apprehended appellant after he left the restaurant, but not before he drew his gun and fired several shots at them, slightly wounding one officer. Appellant also pointed his gun at another police officer who arrived on the scene to arrest him.

The government indicted appellant for two violations of the Hobbs Act, 18 U.S.C. § 1951, two counts of using a firearm to commit a crime of violence, 18 U.S.C. § 924(c), and one count of possession of a firearm by a convicted felon, 18 U.S.C. § 922(g). He was also charged with two counts of assault on a police officer pursuant to D.C.Code 22–505(a) and (b). A jury found him guilty as charged and the district court sentenced him to five concurrent life terms of imprisonment for the federal charges, and 20 months to five years imprisonment on the assault charges.

## II.

■ Individuals who use or carry a firearm "during and in relation to any crime of violence" must be sentenced to a five year prison term in addition to any sentence warranted by their conviction for the underlying crime. 18 U.S.C. § 924(c)(1). The term "crime of violence" is defined as a felony that

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Additionally, the federal three-strikes law provides that individuals who have been convicted of two prior serious violent felonies "shall be sentenced to life imprisonment." [1] 18 U.S.C. § 3559(c)(1). Under the statute,

the term "serious violent felony" means—

(i) a Federal or State offense, by whatever designation and wherever committed, consisting of . . . robbery (as described in section 2111, 2113, or 2118); . . . extortion; . . . firearms use; . . . and

(ii) any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense.

*Id.* § 3559(c)(2)(F).[2]

■ A "crime of violence" and a "serious violent felony" are ordinarily designated as such by looking to the statutory definition of the crime, rather than the evidence presented to prove it. *See, e.g., United States v. Romero,* 122 F.3d 1334, 1342–43 (10th Cir. 1997); *United States v. Amparo,* 68 F.3d 1222, 1225–26 (9th Cir.1995). Although appellant's armed robberies contained all the indicia of violent acts, he correctly observes that what he did is not at issue. Instead, the question is whether the crime with which he was charged constituted a serious violent felony or a crime of violence. As the Supreme Court explained in *Taylor v. United States,* 495 U.S. 575, 601, 110 S.Ct. 2143, 2159–60, 109 L.Ed.2d 607 (1990), "Congress generally took a categorical approach to predicate offenses" because "the practical difficulties and potential unfairness of a factual approach are daunting." *Id.* Appellant contends that his § 924(c) and third-strike conviction must be

1. Appellant had been convicted of armed robbery and assault with a deadly weapon in 1970 and of armed bank robbery and robbery in 1981.

2. The analyses of appellant's contentions under § 924(c) and § 3559(c) do not differ in any significant respect. Appellant did not raise his three-strikes claim in the district court. Accordingly, the error made by the district court on that

issue would have to be "obvious" to entitle him to relief. *United States v. Saro,* 24 F.3d 283, 288 (D.C.Cir.1994). But because we conclude that the district court made no error of any kind in sentencing appellant under § 924(c) or the three-strikes law, the different standard of review does not require a different analysis.

vacated because the Hobbs Act charges cannot constitute predicate crimes of violence or serious violent felonies, as required by both statutes.

The Hobbs Act provides in pertinent part:
(a) Whoever in any way or degree obstructs, delays, or affects commerce ... by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.
(b) As used in this section—
(1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence....
(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

18 U.S.C. § 1951.

█ The Hobbs Act thus prohibits interference with interstate commerce through either robbery or extortion. Because extortion under color of official right need not be effected through violence, not all crimes under the Hobbs Act need be violent crimes. Appellant would accordingly have this court interpret *Taylor* to mean that if one possible way to violate a criminal statute could be nonviolent, all statutory violations would be immunized from the three-strikes law and § 924(c). Yet doing so would ignore an exception provided in *Taylor* that has been interpreted by this court and others to cover statutes that enjoin both violent and nonviolent forms of conduct. In *Taylor*, the Supreme Court explained that its "categorical approach ... may permit the sentencing court to go beyond the mere fact of conviction" in cases where the crime is "generic." *See Taylor*, 495 U.S. at 602, 110 S.Ct. at 2160. Because the mere fact of conviction under the Hobbs Act does not establish whether a defendant was convicted of a violent or nonviolent crime, the Hobbs Act is one of the "generic" crimes that requires further assessment by the district court. *See United States v. Mendez*, 992 F.2d 1488, 1490 (9th Cir.1993). In the instant case, therefore, the district court was entitled to look at the indictment or jury instructions to determine whether the charged crime was "by its nature" a crime of violence pursuant to § 924(c)(3)(B) or a serious violent felony pursuant to § 3559(c)(1)(A)(ii).[3] *See United States v. Palmer*, 68 F.3d 52, 55–56 (2d Cir. 1995); *United States v. Winter*, 22 F.3d 15, 18 (1st Cir.1994). As the Ninth Circuit has concluded where "the indictment expressly states which of the various permutations of § 1951 is the source of the conviction ... [w]e may consider [the] indictment in determining the nature of an offense using the categorical approach." *Mendez*, 992 F.2d at 1491; *cf. also United States v. Elder*, 88 F.3d 127, 128–29 (2d Cir.1996) (per curiam); *United States v. Farmer*, 73 F.3d 836, 842 (8th Cir.1996).

█ Our conclusion comports with this court's prior application of the *Taylor* exception. In *United States v. Mathis*, 963 F.2d 399 (D.C.Cir.1992), this court remanded a three-strikes case to the district court to determine whether "the indictment and/or jury instructions" for a prior conviction "demonstrate that the jury necessarily found that appellant used or threatened to use physical force" in committing his crime. *Id.* at 409. The approach adopted here and in *Mathis* avoids the factual inquiry that concerned the Supreme Court in *Taylor*, but permits courts to treat violent crimes as Con-

---

3. Appellant contends that *Taylor's* exception should apply only where the predicate crimes at issue are prior convictions. Thus, in his view, the exception would only apply to the three-strikes law and not to § 924(c). But other circuits have held that a robbery charged as a violation of the Hobbs Act can serve as a predicate crime of violence under § 924(c). *See, e.g., Mendez*, 992 F.2d at 1491; *Elder*, 88 F.3d at 128–

29. There is no difference, for the purpose of sentencing enhancement statutes, between predicate crimes committed in the past or the present. Either way, appellant was on notice that his violent conduct was both violative of the Hobbs Act and constituted a "crime of violence" and "serious violent felony" susceptible to an enhanced sentence.

**58**

gress intended they be treated. Furthermore, the exception provided to the general rule in *Taylor* is narrow; a district court may only undertake this inquiry when a statute provides for both violent and nonviolent means of violation.

The indictment charged appellant with two counts of "Hobbs Act Robbery, in violation of Title 18, United States Code, Sections 1951(a) and (2)." Because robbery that affects interstate commerce is a violent felony prohibited by the Hobbs Act, and because the indictment establishes that appellant was being charged with such a crime, appellant's contention that his crimes did not constitute "crimes of violence" and "serious violent felonies" for the purposes of the sentencing enhancement statutes fails.

### III.

■ Section 924(c)(1) applies only to those who "use[ ] or carr[y]" a firearm "during and in relation to any crime of violence." 18 U.S.C. § 924(c)(1). In *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the Supreme Court limited the scope of the term "use." The Court held that § 924(c)(1) "requires evidence sufficient to show an active employment of the firearm by the appellant, a use that makes the firearm an operative factor in relation to the predicate offense." *Id.* at 143, 116 S.Ct. at 505. "Active employment", the Court specified, "certainly includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." *Id.* at 148, 116 S.Ct. at 508. The government concedes that the district court instructed the jury in accordance with the pre-*Bailey* law of § 924(c) that conflated the terms "use" and "carry" and defined both broadly; appellant accordingly seeks reversal of his § 924(c) convictions.

■ We review the district court's instructions mindful that errors may be harmless. *See United States v. Smart,* 98 F.3d 1379, 1393–94 (D.C.Cir.1996); *United States v. Price,* 76 F.3d 526, 529 (3d Cir.1996). Nonconstitutional error such as is asserted by appellant is harmless when it is highly probable that the error did not contribute to the

conviction. *United States v. Cicero,* 22 F.3d 1156, 1161 (D.C.Cir.1994).

The jury found appellant guilty of two counts of assault, based only on his firing and pointing of his gun at police officers. The indictment charged appellant with "assault [of] Brian Gibson, an officer of the District of Columbia Metropolitan Police Department, by use of a deadly and dangerous weapon, namely, a Colt .38 caliber revolver" and "assault [of] Anthony Paci, an officer of the District of Columbia Metropolitan Police Department, by use of a deadly and dangerous weapon, namely, a Colt .38 caliber revolver." Because appellant was followed by the police from the moment he left the Roy Rogers to the moment he fired his gun at them and was apprehended, his conviction on the assault charges establishes that the jury concluded that appellant carried a gun while he robbed the Roy Rogers in violation of § 924(c). Furthermore, restaurant employees testified that appellant jumped over the counter brandishing a gun. Given the overwhelming evidence of appellant's guilt, we hold that the error in the jury instruction was harmless.

### IV.

■ The district court sentenced appellant to two concurrent terms of life in prison for the robberies pursuant to the three-strikes law. 18 U.S.C. § 3559(c). Under § 3559(c)(4), the government must comply with the provision of 21 U.S.C. § 851(a) if it wishes to invoke the three-strike law against a defendant in a violent felony or drug case. Appellant contends that the government failed to comply with the statute. Although prior to trial the government filed with the district court a three-strikes information that included a certificate of service to the effect that a copy had been mailed to appellant's trial counsel, counsel claimed that she had never received it.

■ Section 851(a) provides that:
No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information

with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. . . .

21 U.S.C. § 851(a)(1). Section 851(a) is a firm and strict rule for which actual notice cannot be substituted for compliance with the rule; nor does actual notice render failure to comply strictly with the service requirements harmless. As this court has explained, "Section 851 gives defendants a chance to contest the accuracy of the government's recital of their prior convictions." *See United States v. Vanness*, 85 F.3d 661, 663 & n. 2 (D.C.Cir. 1996). Furthermore, "[s]ection 851(a) . . . inform[s] the defendant that [ ]he faces severe consequences if convicted." *Kelly v. United States*, 29 F.3d 1107, 1109 (7th Cir. 1994). Put succinctly, "[a] prosecutor's compliance with § 851(a)(1) is simply a necessary condition to a judge's imposing an enhanced sentence on the basis of a defendant's prior convictions." *Vanness*, 85 F.3d at 663 n. 2. Because service is a necessary condition of compliance with the statute, "the doctrine of harmless error does not apply with respect to failures to follow the statutory scheme of § 851." *United States v. Weaver*, 905 F.2d 1466, 1481 (11th Cir.1990) (quotation marks, citation omitted); *Kelly*, 29 F.3d at 1109–10.

■ Therefore, the government had to comply with the rules regarding service by mail when it chose that method of notifying appellant under § 851(a). The Federal Rules of Criminal Procedure direct that service be made in accordance with the rules "provided in civil actions." Fed.R.Crim.P. 49(b). Rule 5(b) of the Federal Rules of Civil Procedure provides that

[s]ervice upon the attorney or upon a party shall be made by delivering a copy to the attorney or party or by mailing it to the attorney or party at the attorney's or party's last known address or, if no address is known, by leaving it with the clerk of the court. . . . Service by mail is complete upon mailing.

Fed.R.Civ.P. 5(b). Under Rule 5(b), then, the government was obligated to show only that it mailed the information to appellant's counsel, and not that defense counsel actually received the letter, to comply with the service requirements set forth in § 851(a). "Service is deemed complete at the instant the documents are placed into the hands of the United States Post Office or a Post Office Box." 3D *Moore's Federal Practice* § 5.04[2][a] (citing cases); *see also* 4A Wright & Miller, *Federal Practice and Procedure* § 1148 (citing cases).

The evidence before the district court on the issue of mailing consisted of the testimony of an Assistant United States Attorney that he had either placed the information addressed to appellant's trial counsel in the out-box in his office or given it to his secretary with written instructions to mail it, and that the mail was picked up twice a day from his immediate office. Although he had no independent recollection of giving the information at issue to his secretary, the Assistant described his normal procedure and noted the file stamp as indicating that the original copy had in fact been filed in the district court. Further, there was no indication from the Assistant's secretary or otherwise that there had been any problems with mail pick up in his office during that period. Appellant contends that this evidence—that the prosecutor either put the information in his out-box or gave it to his secretary to mail—supports an inference that the letter was lost as easily as it supports an inference that the letter was mailed.

The district court found that the government had satisfied its statutory obligations, as evidenced by the certificate of service attached to the court-filed information and the testimony of the Assistant about his usual mailing practices.[4] Although we find no clear error in this finding, *see United States*

4. The Assistant also testified, and was corroborated by a second Assistant, that the three-strikes nature of the case had been discussed with appellant's counsel. The district court had also stated during a pretrial conference that this was "a section 3559 case" and "a third strike case." The court accordingly found that appellant had actual notice of the government's intentions. Because review for harmless error review is inapplicable in evaluating the government's compliance with § 851(a), the finding of actual knowledge of the government's intentions is of no moment. *Weaver*, 905 F.2d at 1481.

*v. White,* 116 F.3d 903, 911 n. 2 (D.C.Cir. 1997), *cf. Clayton Brokerage Co. of St. Louis, Inc. v. Bunzel,* 820 F.2d 1459, 1463 (9th Cir.1987); *General Electric Co. v. Brown Transport Corp.,* 597 F.Supp. 1258, 1260 (E.D.Va.1984), the government's evidence is just barely sufficient to meet its burden of proof. The mailbox rule defining permissible service by mail cannot be converted in to an out-box rule. Missing from the government's evidence is any testimony regarding what the secretary might have done with the information addressed to appellant's counsel and evidence regarding the standard operating procedures within the United States Attorney's Office for the handling of out-box mail. Somewhat similar to the point appellant makes, on this record another factfinder might have concluded that the evidence of mailing was in equipoise. In light of the important purposes underlying the statutory requirement, there is good reason for the government to avoid that possibility, and it can easily do so by viewing its statutory obligation to encompass establishing a chain of "custody": the government must present evidence on the role of each person who handles a document, from the point of its creation to its entrustment to the United States Postal Service, thereby establishing that the document was, in fact, served on the defendant or his counsel. Then, "as a matter of reasonable probability," the possibilities of misplacing or failing to send the document have been eliminated, and the government has met its burden of establishing an adequate chain of service. *United States v. Robinson,* 447 F.2d 1215, 1220 (D.C.Cir. 1971) (*en banc*) (quoting *Gass v. United States,* 416 F.2d 767, 770 (D.C.Cir.1969)); *see also United States v. Stewart,* 104 F.3d 1377, 1383 (D.C.Cir.1997). When hand-to-hand evidence cannot be produced, the government can fill the gap by offering evidence of the usual and normal practices at each stage. *See, e.g., United States v. Luna,* 585 F.2d 1, 6 (1st Cir.1978). Other than the Assistant's testimony, the government failed to offer evidence of this sort. However, the record indicates that the information was actually filed in the district court with a statement of service on appellant's trial counsel. The timely filing of this information supports an inference of regularity as to the other aspects of the Assistant's conduct. Thus, the district court's finding that service by mail occurred was not clearly erroneous. Nonetheless, government counsel will be well advised in the future not to rely on such a weak inference to fill evidentiary gaps, in place of more substantial evidence of the usual practice of routing mail.

## V.

■ Appellant was sentenced to a term of life imprisonment for violating 18 U.S.C. § 922(g), which provides, in pertinent part,

> It shall be unlawful for any person—

> (1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year

> . . .

> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

This "felon-in-possession" count was based on the gun found in appellant's possession when he was apprehended after the second robbery. Though appellant's possession of the weapon violated the statute, appellant contends that his life sentence for the crime represented a misapplication of the Guidelines, and we agree.

Under the Guidelines the sentencing court is required to "determin[e] a single offense level that encompasses all of the counts of which the defendant is convicted." U.S.S.G. Ch. 3, Pt. D, introductory commentary. The Guidelines also require the sentencing court to "group" counts related to the same acts. U.S.S.G. § 3D1.2(c). The district court appropriately grouped appellant's second robbery of the Roy Rogers with his felon-in-possession count, but acted in contravention to U.S.S.G. § 5G1.2 in imposing a life sentence for robbery.

Under the Guidelines, the determination of a single offense level for each of the grouped counts is assessed at the sentence required by the highest offense level for any of the counts in the group. U.S.S.G. § 3D1.3(a).

All grouped counts are then sentenced at that level. *Id.* The combined adjusted offense level for the robbery count was 34, which translated to a Guidelines range of 262–327 months. This sentence should have been imposed on appellant for his felon-in-possession count. But the district court did not impose the Guidelines range for either the robbery or the felon-in-possession count. It correctly did not impose the Guidelines range on appellant's robbery count because that count constituted appellant's third strike, and therefore required the imposition of a mandatory minimum life sentence. See 18 U.S.C. § 3559(c)(1). However, the court also imposed life imprisonment on appellant for the grouped felon-in-possession count. Yet U.S.S.G. § 5G1.2 provides that for multiple-count sentences:

> [e]xcept as otherwise required by law (*see* 5G1.1(a), (b)), the sentence imposed on each ... count shall be the total punishment as determined in accordance with Part D of Chapter Three and Part C of this Chapter.

Under Part D of Chapter 3 and Part C of Chapter 5, the determination of the appropriate sentence is generally made without regard to any applicable statutory minimums or maximums.[5] The Commentary to § 5G1.2 indicates that the term "total punishment" refers only to the punishment based on the combined offense level, without regard to any applicable mandatory sentence. "The combined length of the sentences ('total punishment') is determined by the adjusted offense level." U.S.S.G. § 5G1.1 commentary. In appellant's case, the Guidelines range for the felon-in-possession count and the second Hobbs Act count was 34, or 262–327 months. That range, and not the mandatory life imprisonment term is the "total punishment" referred to in § 5G1.2(b). Hence, the fact that appellant failed to object in the district court to his life sentence on the felon-in-possession count does not foreclose our determination that plain error has occurred. *See Saro*, 24 F.3d at 286.

The ramifications of this error are reflected the opening clause of § 5G1.2(b), which reads "[e]xcept as otherwise required by law...." A mandatory sentence exceeding the guidelines range is a sentence "otherwise required by law." But if mandatory minimum sentences were factored into the determination of the "total punishment," the total punishment would always be consistent with the punishment "required by law." To give the opening clause meaning total punishment must be determined in accordance with the adjusted combined offense level.[6]

Accordingly, we affirm the judgment of conviction in all respects except we vacate the sentence on count five and remand the case so that the district court can impose a new sentence on that count.

---

5. There are only two references in Part D of Chapter 3 or Part C of Chapter 5 to statutorily mandated punishments: § 3D1.1(b) provides that counts subject to a mandatory consecutive sentence are excluded from the grouping rules, and § 5C1.2 provides for downward departures from a statutory minimum under the safety valve.

6. Appellant's Commerce Clause contention is foreclosed by the court's rejection of the same contention by Harrington, the codefendant, who maintained that the Hobbs Act prohibition against "obstructing, delaying, or affecting commerce or the movement of any article or commodity in commerce, by robbery or extortion," 18 U.S.C. § 1951(a), did not extend to the robberies of the Roy Rogers on Georgia Avenue. *See Harrington*, 108 F.3d at 1464–70 (D.C.Cir. 1997). The court concluded that "[w]ithout relying on disputed facts or dubious or speculative rationales, the jury could securely conclude that ... this missing [stolen] money would [be used in] a series of interstate transactions." *Id.* at 1469.