United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 24, 2004**

Charles R. Fulbruge III
Clerk

REVISED SEPTEMBER 13, 2004

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 02-20331

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

PEDRO CALDERON-PENA,

Defendant-Appellant.

Appeal from the United States District Court
For the Southern District of Texas

Before KING, Chief Judge, and JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART, DENNIS, CLEMENT, PRADO, and PICKERING, Circuit Judges.

PER CURIAM:

This case involves the application of the sixteen-level "crime of violence" sentence enhancement under § 2L1.2 of the Sentencing Guidelines. Defendant Pedro Calderon-Pena's seventy-month sentence for illegally reentering the United States in violation of 8 U.S.C. § 1326 included a sixteen-level enhancement based on a prior conviction of the Texas crime of child endangerment. In accordance with our recent decision in United States v. Vargas-Duran, 356 F.3d

598 (5th Cir. 2004) (en banc), we hold that Defendant's child-endangerment conviction does not "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another" for purposes of the sixteen-level "crime of violence" enhancement under § 2L1.2. We accordingly vacate Defendant's sentence, and remand for re-sentencing.

## I. BACKGROUND

In February 1999, Calderon-Pena, at that time a lawful permanent resident, pleaded guilty to two counts of the Texas offense of child endangerment for a January 1999 incident involving his two children. He was sentenced to fifteen months' imprisonment. In April 2000, the INS issued Calderon-Pena a notice to appear for a removal hearing. At the hearing, the immigration judge determined that the child-endangerment convictions were "aggravated felonies" under 8 U.S.C. § 1101(a)(43)(F), which rendered Calderon-Pena removable under 8 U.S.C. § 1227. After being removed in June 2000, Calderon-Pena was found unlawfully present in the United States in January 2001 and was later indicted for same under 8 U.S.C. § 1326. Calderon-Pena filed a motion to dismiss the indictment, which the district court denied.[1] The

---

[1] Calderon-Pena's motion charged that his prior removal, an element of the illegal reentry conviction that he now appeals, was invalid because the immigration judge both incorrectly determined that his prior offenses were aggravated felonies and failed to inform him of certain avenues of relief. We voted this case en banc to resolve issues related to the application of the sixteen-level sentence enhancement, which was the ground urged in the petition for rehearing. We now reinstate that portion of the panel

2

court then found him guilty on stipulated facts and sentenced him to seventy months' imprisonment. The sentence included a sixteen-level enhancement predicated on the finding that child endangerment was a "crime of violence" within the meaning of § 2L1.2 cmt. n.1(B)(ii) of the 2001 Sentencing Guidelines, the version that was in force at the time of sentencing.

A panel of this court affirmed Calderon-Pena's conviction and sentence, United States v. Calderon-Pena, 339 F.3d 320 (5th Cir. 2003) ("Calderon-Pena I"), and later denied panel rehearing, 357 F.3d 518 (5th Cir. 2004) ("Calderon-Pena II"). We granted Calderon-Pena's petition for rehearing en banc, 362 F.3d 293 (5th Cir. 2004), and now vacate his sentence.

## II. ANALYSIS

Calderon-Pena was sentenced under § 2L1.2 of the 2001 version of the Sentencing Guidelines. That section calls for a sixteen-level enhancement if the defendant has previously been convicted of a "crime of violence." The relevant commentary defines the term "crime of violence" as follows:

"Crime of violence"--

(I)   means an offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another; and

(II) includes   murder,   manslaughter,   kidnapping,

---

opinion, United States v. Calderon-Pena, 339 F.3d 320, 323–25 (5th Cir. 2003), that rejected Calderon-Pena's attempt to collaterally attack his prior removal.

3

> aggravated assault, forcible sex offenses (including sexual abuse of a minor), robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.

U.S.S.G. § 2L1.2 cmt. n.1(B)(ii) (2001).[2] The government does not contend that the child-endangerment conviction is an enumerated offense under paragraph (II). Thus, the question before us is whether, under paragraph (I), the district court properly held that the prior offense "has as an element the use, attempted use, or threatened use of physical force against the person of another." We review the district court's interpretation of the Sentencing Guidelines de novo. United States v. Medina-Anicacio, 325 F.3d 638, 643 (5th Cir. 2003).

Identifying the elements of the defendant's prior offense

The child-endangerment statute under which Calderon-Pena was convicted provides, in relevant part:

> A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental impairment.

TEX. PEN. CODE ANN. § 22.041(c) (Vernon 2003).[3] The record in this case contains the state indictments that led to the prior guilty-

---

[2] The 2002 and 2003 versions of the Guidelines retain this same language, though the 2003 definition of "crime of violence" has been rearranged in ways not relevant to this case. Compare U.S.S.G. § 2L1.2 cmt. n.1(B)(ii) (2001), and U.S.S.G. § 2L1.2 cmt. n.1(B)(ii) (2002), with U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (2003).

[3] The relevant portion of this statutory provision has remained unchanged since the time of Calderon-Pena's 1999 conviction.

4

plea convictions.  Apart from the name of the child involved, the two indictments are identical and charge that Calderon-Pena:

> [O]n or about JANUARY 3, 1999, did then and there [i.e., in Harris County, Texas] unlawfully, intentionally and knowingly engage in conduct that placed [his son], a child younger than fifteen years of age and hereafter called the Complainant, in imminent danger of bodily injury, namely, by striking a motor vehicle occupied by the Complainant with the Defendant's motor vehicle.

Although the actual conduct described in the indictments could be construed to involve the use of physical force against the person of another, that is irrelevant for purposes of this case. The inquiry under paragraph (I) looks to the <u>elements</u> of the crime, not to the defendant's actual conduct in committing it.  This rule springs directly from the language of the "crime of violence" definition itself, which states that a "crime of violence" is an offense that "has as an <u>element</u>" the use of force.  U.S.S.G. § 2L1.2 cmt. n.1(B)(ii)(I) (emphasis added).  The elements of an offense of course come from the statute of conviction, <u>see</u> <u>United States v. White</u>, 258 F.3d 374, 382 (5th Cir. 2001), not from the particular manner and means that attend a given violation of the statute.[4]  Prior decisions of this court have accordingly held that the statute of conviction, not the defendant's underlying conduct,

---

[4] For example, suppose that an indictment charged a defendant with the crime of disturbing the peace (or even the crime of littering) and also specified that he committed the crime "by throwing a bottle at the victim's head."  Under state law, the prosecution might be required to prove that the defendant indeed engaged in that charged conduct, but throwing a bottle at someone is not an element of the disturbing-the-peace statute (or of littering).  It is, rather, one manner of violating the statute.

5

is the proper focus.  See, e.g., Vargas-Duran, 356 F.3d at 606 (concluding that the inquiry is limited to "[l]ooking only at the fact of [the defendant's] conviction and the statutory definition"); United States v. Rodriguez-Rodriguez, 323 F.3d 317, 318-19 (5th Cir. 2003) (same).

The understanding of "elements" just described comports as well with the Supreme Court's decision in Taylor v. United States, 495 U.S. 575 (1990), which, in the context of a different sentence enhancement, distinguished the question of whether a crime has the use of force "as an element" from the question of whether the crime "involves" the use of force "in a particular case."  Id. at 600. Taylor instructed, moreover, that a sentencing court's inquiry should, as a general rule, look only to the statutory definition of an offense and the fact of conviction and "not to the facts underlying the prior conviction[]."  Id. at 600-02.

At oral argument in this case, the government contended at certain points that defendants can qualify for the sixteen-level enhancement when they have previously been charged with and convicted of conduct that involved force, notwithstanding that no portion of the statute of conviction itself requires force. According to the government, the elements expand "beyond the statute" to include factual material about the method of committing the offense that, when alleged in charging papers, must then be proven at trial.  That is, the government contends, if the statutory language itself fails to require force, we would turn to

the manner of commission in the particular case (as charged) to see if that involved force. Thus, on this view, the ultimate question in this case would be whether Calderon-Pena's act of "striking a motor vehicle occupied by the Complainant with the Defendant's motor vehicle" involved the use of force. Under that approach, of course, the analysis of the statute would be superfluous: the determinative factor would be the forcefulness of the defendant's underlying charged conduct, regardless of the statute of conviction. Each conviction under the child-endangerment statute would then require its own individualized "use of force" inquiry, asking whether a particular method of endangering--leaving a child in a hot car, leaving a child near a deep pool, denying medical treatment, and so on, ad infinitum--involves force. This cumbersome approach would essentially excise the "element" language from the Guideline.[5]

Moreover, under Texas law, the manner and means, even when required to be charged in the indictment, does not constitute an element of the offense, but rather satisfies the due process concerns relating to providing defendants with sufficient notice of

---

[5]    Many sentencing provisions lack the "as an element" language at issue here, and we have permitted broader uses of charging papers in such cases. See, e.g., United States v. Rodriguez-Duberney, 326 F.3d 613, 616-17 (5th Cir. 2003) (allowing for use of the indictment and the underlying charged conduct to determine whether a Travel Act violation under 18 U.S.C. § 1952 was a drug trafficking offense that necessitated a sixteen-level enhancement pursuant to § 2L1.2(b)(1)(A)(i)).

7

the crime for which they have been charged.[6] See Boney v. State, 572 S.W.2d 529, 532 (Tex. Crim. App. 1978) ("An indictment for aggravated assault need not allege the manner and means used to commit the assault as such is not an element of the offense but relates only to the certainty and definiteness required to enable the defendant to reasonably understand the nature and cause of the accusation against him.").

The panel that originally decided this case agreed that it would not be proper to "look[] to the indictment to see whether the facts there shown required force." Calderon-Pena I, 339 F.3d at 329. The panel then contrasted that concededly impermissible activity with the distinct activity of "looking to the indictment to determine which elements in a statute of conviction were satisfied." Id. It concluded that the sentencing court could look to the indictment or jury instructions "for the limited purpose of determining which of a series of disjunctive elements a defendant's

---

[6] We do not imply that the meaning of the term "element" in § 2L1.2 is determined by the law of any particular state, noting simply that Texas is not unusual in its understanding of the elements of an offense. The criminal law has traditionally distinguished between the elements of an offense and the manner and means of committing an offense in a given case. Indeed, the Guidelines themselves recognize such a distinction. Compare U.S.S.G. § 4B1.2(a)(1) (2003) (using "as an element" language), with id. § 4B1.2(a)(2) (using the phrase "involves conduct"). The distinction is also recognized in the commentary to § 4B1.2. See id. § 4B1.2, cmt. n.1 (defining a "crime of violence" as an offense that either "has as an element the use, attempted use, or threatened use of physical force against the person of another"; or where the "conduct set forth . . . in the count of which the defendant was convicted . . . by its nature, presented a serious potential risk of physical injury to another").

8

conviction satisfies." <u>Id.</u> Under that approach, whenever a statute provides a list of alternative methods of commission--just as the statute in <u>Taylor</u> referred to burglaries of several different types of structures, 495 U.S. at 578 n.1--we may look to charging papers to see which of the various statutory alternatives are involved in the particular case. We agree that such a use of the indictment--a matter not at issue in <u>Vargas-Duran</u>--is permissible. <u>Cf.</u> <u>United States v. Landeros-Gonzales</u>, 262 F.3d 424, 426 (5th Cir. 2001) (using allegations from an indictment to determine which of several statutory subsections the defendant had violated).[7]

---

[7] Judge Jones argues in her dissent that the "as an element" language permits us to look to the particular facts charged in a case when an offense can be committed in both violent and non-violent ways. Our court's approach, she writes, marks us as an outlier, "alone" among the courts of appeals. We are compelled to disagree with Judge Jones's assessment of the law of our sister circuits as neither our understanding of the "as an element" language, nor our reading of <u>Taylor</u> is novel. <u>See, e.g.</u>, <u>United States v. Fulford</u>, 267 F.3d 1241, 1248-51 (11th Cir. 2001) (holding, in a case involving the "serious violent felony" sentencing statute, that the statute's "as an element" language bars a sentencing court from examining the particular facts alleged in the charging papers); <u>United States v. Doe</u>, 960 F.2d 221, 224 (1st Cir. 1992) (Breyer, C.J.) (explaining that sentencing courts are limited to looking to the crime as the statute defined it rather than considering whether the defendant, in fact, committed the predicate crime in a violent manner).

We respectfully submit that Judge Jones's charge that we are an outlier results from a misreading of some of the cases that she cites. For instance, while the Fourth Circuit's decision in <u>United States v. Coleman</u>, 158 F.3d 199 (4th Cir. 1998) (en banc), permitted the district court to examine the factual method of committing common law assault, it also noted:

> [A]n offense that actually may have been committed by the use of physical force against the person of another nevertheless is not considered to be a violent felony if

the elements of the offense do not include the use, attempted use, or threatened use of physical force. . . . In those narrow circumstances in which an offense could have been committed in two ways, one of which required a finding that physical force was used and the other of which did not, a district court must look past the fact of conviction and the elements of the offense to determine which type of offense supported the defendant's conviction. . . . A Maryland conviction for common-law assault presents <u>the unusual situation in which an offense may be committed in one of two ways--one of which requires the use, attempted use, or threatened use of physical force and one of which does not</u>.

<u>Id.</u> at 201-02 (emphasis added).  The endangerment statute at issue here in <u>Calderon-Pena</u> does not present the "unusual situation" that existed in <u>Coleman</u>, as the statute here simply does not provide explicitly that it can be violated in such a way that requires the use, attempted use, or threatened use of physical force against the person of another.

In <u>United States v. Kennedy</u>,  133 F.3d 53 (D.C. Cir. 1998), the second of the two principal cases relied upon by Judge Jones's dissent, the D.C. Circuit indicated that the sentencing court could "look at the indictment or jury instructions to determine whether the charged crime was "<u>by its nature</u>" a crime of violence pursuant to § 924(c)(3)(B)." <u>Id.</u> at 57.  Significantly, the statute defining the prior offense itself listed two methods of violation--"robbery or extortion"--and the court looked to the indictment only to see which prong of the statute was violated.  <u>Id.</u> at 56-58.  Thus, <u>Kennedy</u> comports with our position, not the dissent's.

In <u>United States v. Gomez-Hernandez</u>, 300 F.3d 974 (8th Cir. 2002), the Eighth Circuit looked to the underlying charging papers (and apparently facts contained in the PSR as well) to determine the elements of the crime to which the defendant had pleaded guilty because the statutory definition encompassed conduct that may or may not have been considered a "crime of violence" under § 2L1.2. <u>Gomez-Hernandez</u> may go beyond even what Judge Jones would allow. But <u>Gomez-Hernandez</u> appears to conflict with a prior Eighth Circuit case, which (in agreement with our holding) stated that the categorical approach permitted use of charging papers "only to determine under which portion of the assault statute [the defendant] was convicted."  <u>See</u> <u>United States v. Smith</u>, 171 F.3d 617, 620-21 (8th Cir. 1999).

In sum, while there may be some disagreement among the circuits regarding the use of the indictment, it is not accurate to claim, as Judge Jones's dissent does, that we have embraced a perverse and anomalous position rejected by most courts.  And, importantly, on the merits, our approach has the virtue of

10

<u>Whether the child-endangerment offense has the use of force as an element</u>

Although the above-described method of using the indictment to pare down a statute is often useful, it is of no help to the government in this particular case. The child-endangerment statute provides that "[a] person commits an offense if he intentionally, knowingly, recklessly, <u>or</u> with criminal negligence, by act <u>or</u> omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, <u>or</u> physical <u>or</u> mental impairment." TEX. PEN. CODE ANN. § 22.041(c) (emphases added). The statute thus sets forth a disjunctive list of elements; it proscribes a range of conduct, from intentional acts that create a mortal danger to negligent omissions that risk mental impairment. The indictment, quoted earlier, allows us to narrow down the statutory options, leaving us with the offense of "knowingly . . . by act . . . engag[ing] in conduct that places a child younger than 15 years in imminent danger of . . . bodily injury." But even after we have used the indictment to identify which elements were involved in Calderon-Pena's case, the pared-down statute does not have the use, attempted use, or threatened use of physical force against the victim's person as a required element.

In the instant case it is notable that the offense of child endangerment does not require any bodily contact (let alone violent

respecting the "as an element" language of the Guideline.

11

or forceful contact) or any injury in order for a conviction to lie.[8]  To commit the offense, one need only knowingly create a danger of bodily injury.[9]  The child need not even be aware of the danger.  As a matter of simple logic, the endangerment offense can--but need not--involve the application of physical force to the child's person.  Under the plain meaning of the phrase "use of physical force against the person of another," this offense does not qualify for the sixteen-level enhancement.

We also reject the panel's suggestion that Calderon-Pena's prior conviction had as an element the attempted use of physical force against the person of another.  In Vargas-Duran, this court

---

[8] Part II.A of Judge Smith's dissent contends that we have fallen into serious error in holding that the "use of force" always requires "bodily contact."  This opinion does not so hold.  While it is true, as Judge Smith observes, that a perpetrator can injure (or even kill) a person without making bodily contact, that truism is beside the point in this case.  The Texas child endangerment statute requires neither contact nor injury; and certainly there is no use of force when both are lacking.

[9]  We note that there is apparently some disagreement among the Texas courts over whether the statute's mental-state element applies to the defendant's "engag[ing] in conduct" or applies instead to the defendant's mental state with regard to the creation of danger.  Compare Walker v. State, 95 S.W.3d 516, 520-21 (Tex. App.—Fort Worth 2002, pet. ref'd) (holding that a defendant can intentionally or knowingly engage in conduct that endangers a child "[without] proof that the person intend or know that his conduct places the child in such imminent danger"), with Millslagle v. State, 81 S.W.3d 895, 897 n.1 (Tex. App.—Austin 2002, pet. ref'd) (suggesting a contrary reading).  For purposes of argument, we can assume that the panel was correct in asserting that the mental state applies to the creation of a danger--that is, that Calderon-Pena knew that he was endangering the children, not just that he knew he was engaging in conduct.  Calderon-Pena's conduct would be less culpable if, under the rule of Walker, he lacked a mens rea with regard to the danger.

12

considered the meaning of the "crime of violence" definition in the precise guideline at issue here.  While the court there held that the plain meaning of the term "use" requires intentionality, Vargas-Duran, 356 F.3d at 602-05, a second, alternative holding established the meaning of the phrase "as an element," id. at 605-06.  Specifically, this court determined:

> [I]n order for § 2L1.2 to apply, the intentional use of force must be a constituent part of a claim that must be proved for the claim to succeed.  If any set of facts would support a conviction without proof of that component, then the component most decidedly is not an element--implicit or explicit--of the crime.

Id. at 605 (quotations and citation omitted).

Clearly, the pared-down statute can be successfully prosecuted without proof of attempted use of force.  One can knowingly endanger without trying to make any bodily contact with the victim's person and without trying to inflict bodily injury on the person.  Our precedents have properly recognized that the "attempted use of physical force" requires at least that the perpetrator harbor an intent to use physical force against the victim's person.  See Vargas-Duran, 356 F.3d at 603; White, 258 F.3d at 384.  The child-endangerment offense does not require any such intent to use physical force against the victim, for, again, one can knowingly endanger (or even intentionally endanger) without intending to make any physical contact with the victim or intending to cause the victim any bodily injury.  Under the plain meaning of the phrase "attempted use of force against the person of

13

another," the child-endangerment offense does not qualify.

Our decision is further reinforced by the observation that, rather than involving the use of physical force against the victim, the essence of endangerment is the wrongful creation of a risk of harm. But unlike certain other provisions of the Sentencing Guidelines, the § 2L1.2 "crime of violence" definition notably does not contain language referring to the risk of harm.[10] Compare U.S.S.G. § 4B1.2(a)(2) (2003) (encompassing conduct that "presents a serious potential risk of physical injury"). Creating a risk of injury, even when done knowingly or intentionally, is clearly not the same as using or attempting to use physical force against the person of another. Cf. Dalton v. Ashcroft, 257 F.3d 200, 207 (2d Cir. 2001) (observing that "[t]here are many crimes that involve a substantial risk of injury but do not involve the use of force"); United States v. Chapa-Garza, 243 F.3d 921, 925 (5th Cir. 2001) (contrasting conduct that involves "a serious risk of physical injury" with conduct that presents "a substantial risk that the defendant will use physical force against another's person").[11]

---

[10] It is important to recognize that in construing the provisions of § 2L1.2, we are focusing only on the definition of "crime of violence" as that term is used in this particular guideline provision. We do not purport to say that this definition applies to other guideline provisions that utilize the "crime of violence" terminology but with different definitional language.

[11] The Sentencing Commission has explained its reasoning for creating in 2001 the four-level graduated sentencing enhancement in § 2L1.2. U.S.S.G. Supp. to App. C, amend. 632. Specifically, the Commission notes that the amendment was a response to concerns expressed by the Department of Justice, judges, probation officers,

14

and defense attorneys who felt that § 2L1.2 "sometimes result[ed] in disproportionate penalties because of the 16-level enhancement provided in the guideline for a prior conviction for an aggravated felony."  Id.  The Commission explains that:

> The disproportionate penalties result because the breadth of the definition of "aggravated felony" provided in 8 U.S.C. § 1101(a)(43), which is incorporated into the guideline by reference, means that a defendant who previously was convicted of murder, for example, receives the same 16-level enhancement as a defendant previously convicted of simple assault.

Id.

The Commission remarks that it specifically focused its attention on creating a distinction between the eight- and sixteen-level enhancements, noting that a sentencing court can make a more proportionate determination as to sentencing depending on the seriousness of the prior felony conviction.  It suggests that the sixteen-level enhancement is proper if the defendant previously was deported, or unlawfully remained in the United States, after being convicted of "certain serious offenses," including specifically:

> a drug trafficking offense for which the sentence imposed exceeded 13 months, a felony that is a crime of violence, a felony that is a firearms offense, a felony that is a national security or terrorism offense, a felony that is a human trafficking offense, and a felony that is an alien smuggling offense committed for profit.

Id.  The Commission adds that "[a]ll other aggravated felony offenses will receive an 8-level enhancement." Id.

This Court has previously recognized the policy behind the 2001 amendments.  In United States v. Caicedo-Cuero, 312 F.3d 697 (5th Cir. 2002), the panel concluded that:

> [T]he Commission intended the [2001] guideline amendments to break up aggravated felonies by providing for the sixteen-level increase only in the case of the more serious offenses, e.g., murder or serious drug trafficking offenses for which the sentence imposed was over 13 months, while providing lesser penalties for the less serious, but still aggravated, offenses, e.g., assault and simple drug possession.

Id. at 711.  This Court went on to note that the broader definition of crimes of violence and drug trafficking offenses referenced in § 1101(a)(43) "apply to less severe aggravated felonies that warrant the eight-level enhancement." Id.

We observe here that Calderon-Pena's conviction for child endangerment is characterized under Texas law as a state jail felony, a categorization that receives the lowest quantum of punishment of all Texas felonies, among which are capital felonies,

## III. CONCLUSION

For the foregoing reasons, we conclude that Calderon-Pena's seventy-month sentence should not have included the sixteen-level "crime of violence" enhancement under U.S.S.G. § 2L1.2 cmt. n.1(B)(ii). We leave it to the district court to determine on remand whether Calderon-Pena's prior offense can be considered an "aggravated felony" that would call for application of § 2L1.2's eight-level sentence enhancement.

Accordingly, Calderon-Pena's conviction is AFFIRMED, see supra note 1, his sentence is VACATED, and the case is REMANDED for further proceedings not inconsistent with this opinion.

---

first-degree felonies, second-degree felonies, and third-degree felonies. The range of punishment for a state jail felony varies from 180 days' to two years' confinement. It follows that an offense such as this which results in a defendant spending as few as 180 days in jail would not be subject to the same sixteen-level enhancement for a defendant who commits aggravated robbery, a first-degree felony under TEX. PEN. CODE ANN. § 29.03 (Vernon 2003), which carries a sentence ranging from five years' imprisonment to life in prison. This scenario seems to highlight precisely the distinction the Commission was contemplating when it created the graduated sentencing enhancements in 2001. As such, we should recognize, in accordance with the Commission's amendment commentary, that the graduated sentencing scheme does not contemplate a broad reading of § 2L1.2.

EDITH H. JONES, Circuit Judge, with Judge Rhesa H. Barksdale, dissenting:

I share Judge Smith's concern regarding the inutility of this court's continuing to hear sentencing guidelines cases en banc. I write separately, however, to dissent from what I believe is the majority's pursuit of a "hyper-categorical" approach to sentencing enhancements for crimes of violence. Calderon-Peña plowed his car into another vehicle containing his children. The enhancement issue is whether this prior crime had "as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n. 1(B)(ii). The majority, interpreting our recent en banc decision in United States v. Vargas-Duran, 356 F.3d 598 (5th Cir. 2004), would hold that a criminal act may never be a "crime of violence" under this and similar enhancement provisions unless every imaginable way that an offense could be committed under a given statute of conviction requires the use, attempted use, or threatened use of physical force.

This approach is incorrect. It misreads the Supreme Court's opinion in United States v. Taylor, 495 U.S. 575, 110 S. Ct. 2143, 109 L.Ed.2d 607 (1990), misapplies this circuit's precedents, does not comport with the more reasoned approach applied by our sister circuits, and reaches a patently absurd result. The proper application of Taylor would allow consideration

17

of the facts contained in Calderon-Peña's indictment not only to "narrow" the statute of conviction, as the majority concedes, but also to demonstrate that the intentional use of force was a key fact in Calderon-Peña's underlying conviction for child endangerment.  Under this view, his prior crime was a crime of violence that should require enhanced punishment under § 2L1.2 for this recidivist.

## A.    Understanding **Taylor**

Taylor held that in applying sentencing enhancements based on prior convictions, trial courts should generally "look only to the fact of the conviction and the statutory definition of the prior offense."  See Taylor, 495 U.S. at 600-02, 110 S. Ct. at 2159-60.  The Court found such a "categorical approach" necessary because the legislative history of the enhancement statute there construed, whose language has been a model for later enactments, revealed that Congress did not want trial courts to "engage in an elaborate fact-finding process."  Id. at 601, 110 S. Ct. at 2159. Nonetheless, the Supreme Court also carefully noted that this approach permits a sentencing court to "go beyond the mere fact of conviction in a narrow range of cases" where the jury was required by the indictment or jury instructions to find all the elements of an offense that would fit within the enhancement.  Id. at 602, 110 S. Ct. at 2160.  Taylor, in my view, thus refines the pure categorical approach when a prior conviction is based on a statute

18

that includes various types of conduct, some of which would trigger an enhancement and some of which would not. See id. at 600-02, 110 S. Ct. at 2159-60.

The enhancement of Taylor's crime by the Supreme Court explains the technique. The career criminal statute there enhanced offenders' penalties based on specific predicate offenses including "burglary." Id. at 578, 110 S. Ct. at 2147. The Court held that burglary must have a uniform national meaning under a federal statute. It adopted the common definition of burglary as the entry into a building or other structure with the intent to commit a crime. See id. at 598, 110 S. Ct. at 2158. In some states, however, burglary statutes more broadly encompass places like automobiles and vending machines. Id. at 599, 110 S. Ct. at 2158. The Court accordingly reasoned that where a defendant is convicted under a broad burglary statute that "include[s] entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the government should be allowed to use the conviction for enhancement." Id. at 602, 110 S. Ct. at 2160 (emphasis added). I infer that, under Taylor, if a state statute encompasses a range of conduct broader than that which invokes a federal enhancement, the sentencing court may properly consider the indictment and the jury instructions to determine whether the enhancement should be applied.

19

Properly read, <u>Taylor</u> requires courts <u>first</u> to decide whether a statute of conviction embodies a per se crime of violence under the relevant enhancement provision. <u>Taylor</u>, 495 U.S. at 602, 110 S. Ct. at 2160. If it does not, the inquiry ends and the prior offense may not be used to enhance a defendant's sentence.[1] As discussed in greater detail below, this court's decision in <u>Vargas-Duran</u> – the opinion's broad language notwithstanding – was made at this step of the <u>Taylor</u> inquiry. If, however, a predicate criminal statute contains subsections, <u>or</u> if the offense is described so broadly as to include some acts that fall within the "crime of violence" definition and some that do not, <u>Taylor</u> permits reference to the indictment and jury charge. <u>See</u> <u>United States v. Landeros-Gonzales</u>, 262 F.3d 424, 426 (5th Cir. 2001); <u>United States v. Allen</u>, 282 F.3d 339 (5th Cir. 2002). This order of analysis effectuates Congress's clear intention, in adopting its "crime of violence" provision, to <u>broaden</u> the class of offenses eligible for certain sentence enhancements, while not bogging courts down in complex mini-trials over criminal history. I believe the

---

[1] Our circuit's decisions in <u>United States v. Chapa-Garza</u>, 243 F.3d 921, 927 (5th Cir. 2001) (felony DWI not a crime of violence under 18 U.S.C. § 16(b)), <u>United States v. Charles</u>, 301 F.3d 309, 314 (5th Cir. 2002) (en banc) (theft of motor vehicle not a crime of violence under U.S.S.G. § 4B1.2(a)(2)), and <u>United States v. Rodriguez-Rodriguez</u>, 323 F.3d 317, 319 (5th Cir. 2003) (burglary of a building and unauthorized use of a motor vehicle are not crimes of violence under the 16-level "has as an element" enhancement contained in U.S.S.G. § 2L1.2, but are per se crimes of violence under 18 U.S.C. § 16(b)), which involve various enhancement provisions, are all justifiable at this categorical level.

20

majority's adoption of Vargas-Duran's hyper-categorical language unfairly exaggerates the latter concern while minimizing the former.

**B.  Vargas-Duran and Calderon-Peña**

The majority holds that Taylor's "categorical approach" requires this court to imagine whether there are any circumstances, no matter how far removed from the plain facts of a recidivist's prior crime, under which his statute of conviction may be violated without the use, attempted use, or threatened use of force. This conclusion assertedly derives from the guideline's inquiry whether a prior crime "has as an element" the use, attempted use, or threatened use of physical force. The majority relies on Vargas-Duran's language, which suggests that in order for a "component" of a conviction to be an "element" of the offense, the component must be present under "any set of facts" that constitute a violation of the statute. 356 F.3d at 605. The majority believes not only that it may ignore the facts contained in Calderon-Peña's indictment and guilty plea, but that it is unable to enhance his sentence because, under the open-ended language in Texas's statutory offense of child endangerment, the statute might be violated in a non-violent manner. Under the majority's reasoning, no offense charged under this provision may ever be classified as a crime of violence under § 4B1.2, no matter how brutal the conduct. The majority errs in two ways.

21

First, Vargas-Duran did not depend on this "any set of facts" language. Vargas-Duran, 356 F.3d at 605. In Vargas-Duran, the question before our court was whether the defendant's prior intoxication assault conviction in Texas could be considered a crime of violence under the same "has as an element" language of the Guidelines. Id. at 599-600. The en banc majority, which I joined, held that force must be used intentionally for a given offense to qualify for the enhancement. Id. at 602-03. The majority concluded that because the Texas intoxication assault statute, by definition, does not require the proof of any mens rea, the intentional use of force could not be an "element" of the crime. Id. at 606. Vargas-Duran's analysis stopped at what I have just described as Taylor's first step. Its reference to the "any set of facts" approach was irrelevant to the case. As the majority acknowledges, the child endangerment statute is not amenable to first-step treatment at least on intentionality, as it can be violated in multiple ways and with various mental states:

> A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental impairment.

TEX. PENAL CODE ANN. § 22.041(c)) (VERNON 2003). The majority and I part company, however, on whether the statute includes conduct that has as an element the use, attempted use, or threatened use of force. This disagreement reflects my second major bone of contention with the majority — on the definition of "elements" of

22

an offense under the enhancement. As the Vargas-Duran opinion notes, Black's Law Dictionary defines an element as "[a] constituent part of a claim that must be proved for the claim to succeed," BLACK'S LAW DICTIONARY 538 (7th ed. 1999). Our court has held that "traditionally, an 'offense' was defined by its 'elements,' i.e., facts necessary to support a conviction for the offense," United States v. Williams, 343 F.3d 324, 432 (5th Cir. 2003). See Vargas-Duran, 356 F.3d at 605. The "elements" of an offense may be viewed generically under a statute's language, as the majority does, or they may be considered particularly in light of what the defendant actually did to comprise the offense of conviction. Where, as here, a defendant pleads guilty to the particular offense based on explicit factual allegations in the indictment, the distinction made by the majority between the "elements" of the offense and the "manner and means" of the offense becomes purely theoretical. Further, that distinction does not serve the enhancement's purpose of identifying and penalizing more strictly recidivists who engaged in violent crimes.

The majority does concede, helpfully, that if a statute has disjunctive elements or multiple subsections, rather than apply "any set of facts" to prevent all enhancements, the indictment's allegations and jury charge may be used to "pare down" the statute to the precise subsection that was violated. But taking the next logical step, the court should have acknowledged that when a statute may, by the breadth of its language, irrespective of

23

subparts, be violated in both violent and non-violent ways, the indictment and jury instructions may then be used to ascertain whether the underlying offense constituted a crime of violence under the guidelines.  In failing to do so, the majority's opinion forecloses a sensible and obvious path chosen by other circuits.

## C.    The Application of <u>Taylor</u> in Other Circuits

The majority's reiteration of the "any set of facts" interpretation of <u>Taylor</u> runs counter to the approach adopted by a number of our sister circuits, including the First, Fourth, Eighth and D.C. Circuits.  Each of these courts holds that where a statute may be violated in multiple ways — some of which qualify an offense as a crime of violence and some of which do not — a court may properly refer to the indictment and jury instructions.[2]

---

[2] <u>See</u> <u>United States v. Gomez-Hernandez</u>, 300 F.3d 974, 980 (8th Cir. 2003) (where "the statutory definition [of the predicate offense] encompasses conduct which may or may not be included in the applicable guideline, we may look to the underlying charging papers to determine the elements of the crime to which the defendant pleaded guilty"); <u>United States v. Coleman</u>, 158 F.3d 199, 202 (4th Cir. 1998) (en banc) (where a predicate offense "may be committed in one of two ways, one of which requires a finding that physical force was used and the other of which does not, a district court must look past the fact of conviction and the elements of the offense to determine which type of offense supported the defendant's conviction"); <u>United States v. Kennedy</u>, 133 F.3d 53, 57 (D.C. Cir. 1998) (a conviction under the Hobbs Act requires a district court to examine the indictment to determine whether the conviction qualifies for an enhancement); <u>United States v. Damon</u>, 127 F.3d 139, 142 (1st Cir. 1997) (under <u>Taylor</u>, "a sentencing court may go beyond the fact of conviction in those cases where the statute encompasses both violent felonies . . . and non-violent felonies . . . ."). <u>See</u> <u>also</u> <u>United States v. Shepard</u>, 348 F.3d 308, 312-14 (1st Cir. 2003); <u>United States v. Londono-Quintero</u>, 289 F.3d 147, 151 (1st Cir. 2002) ("Where the statutory definition encompasses both predicate and non-predicate offenses, however, it

24

In Coleman, for instance, the Fourth Circuit considered whether a conviction for common-law assault under Maryland law constituted a "violent felony" requiring enhancement under the Armed Career Criminal Act of 1984.[3] The court held that where a predicate offense "may be committed in one of two ways, <u>one of which requires a finding that physical force was used and the other of which does not</u>, a district court must look past the fact of conviction and the elements of the offense to determine which type

_____

may be necessary to go beyond the statute and the fact of conviction"); <u>United States v. Harris</u>, 964 F.2d 1234, 1235 (1st Cir. 1992) (Breyer, C.J.) (noting that in cases where "a single statute . . . covers more than one crime . . . it would be appropriate for the sentencing court to look to the conduct . . . not because the court may properly be interested (in this context) in the violent or non-violent nature of that particular conduct, but because that conduct may indicate that the defendant and the government both believed that the generically violent crime . . . rather than the generically non-violent crime . . . was at issue").

The majority criticizes this dissent's reliance on the above cited cases. <u>See</u> <u>Majority Op.</u> at 10 n.7. Anyone reading this authority with care will find that it in fact supports the dissent's position. More telling is what the majority's lengthy footnote does <u>not</u> say: Nowhere does the majority claim that the 1st, 4th, 8th or D.C. circuits follow the majority position. Footnote 7's sole purpose is to assert that the majority view is not "perverse and anomalous." Unfortunately, to achieve their end, the majority shamelessly stretches precedent. <u>Compare</u> <u>Majority Op.</u> at 10 n.7 (mischaracterizing the statute at issue in <u>Coleman</u> as "explicitly" requiring a violation of the law "in such a way that requires the use, attempted use, or threatened use of physical force," and therefore falling within the <u>Taylor</u> exception) <u>with</u> <u>Coleman</u>, 158 F.3d at 202 ("Nevertheless, because <u>one</u> of the ways in which a Maryland common-law assault can be committed <u>involves</u> [<u>not</u> 'requires'] the use, attempted use, or threatened use of physical force against another . . . .") (emphasis added).

[3] This federal provision is the same one interpreted as to burglary in <u>Taylor</u> and contains the same language concerning the use of force as the "crime of violence" guideline before us in this case.

of offense supported the defendant's conviction." 158 F.3d at 202 (emphasis added). As a result, the en banc court held that the district court properly relied on the charging papers[4] to determine that Coleman's act of pointing a handgun at a police officer constituted a violent felony for the purposes of the federal sentencing enhancement. Id. at 202-03.

Relying on Coleman and its antecedents, the Fourth Circuit has also held that "the record of conviction, the charging document and the jury instructions" may be examined, consistent with Taylor, to determine whether a conspiracy conviction is a crime of violence. United States v. Ward, 171 F.3d 188, 192-93 (4th Cir. 1999).

Similarly, in Kennedy, the D.C. Circuit held that the Hobbs Act is one example of a "generic" criminal statute whose violation requires a district court to examine the underlying indictment to determine whether the conviction qualifies as a "crime of violence" or a "serious violent felony" under federal sentencing law. Kennedy, 133 F.3d at 57. The Kennedy court held this approach acceptable under Taylor where "a statute provides for both violent and nonviolent means of violation," id. at 58 (emphasis added), and "the mere fact of conviction under the Hobbs Act does not establish whether a defendant was convicted of a

---

[4] Under Maryland law, the "charging papers" included the state-required affidavit of the complainant or arresting officer. Coleman, 158 F.3d at 202-03.

violent or nonviolent crime."[5]

Under the majority's "any set of facts" approach to the Taylor categorical inquiry, the result in conspiracy and Hobbs Act cases, and those of similar ilk, such as retaliation, would necessarily differ from Coleman and Kennedy. The majority, unfortunately, demonstrates neither its awareness of the overwhelmingly contrary precedents nor any explanation why it alone understands Taylor and the other circuits are wrong.

The majority does express concern that going beyond the statutory "elements" of a crime, even when the conviction's under-lying facts are plain and admitted, threatens to swallow the categorical approach in favor of real-act sentencing. I disagree. The First Circuit aptly explained that "[u]nder Taylor's cate-gorical approach, burglary is a crime of violence even if no violence was used in the particular case; and conversely, being a felon-in-possession is not a crime of violence even if the felon happened to shoot someone but was convicted only under the felon-in-possession statute." See United States v. Sacko, 178 F.3d 1, 7 (1st Cir. 1999) (noting that under Taylor's categorical approach, the facts of the underlying offense are only relevant to "identify the statutory or common law offense" of conviction and that

_____

[5] The D.C. Circuit noted that its approach in Kennedy was consistent with Taylor because it "avoids the factual inquiry that concerned the Supreme Court in Taylor, but permits courts to treat violent crimes as Congress intended they be treated." Id. at 57-58.

27

"collateral facts as to the defendant's conduct on the earlier occasion are not relevant for any other purpose"). The majority's concern is groundless.

**D.  Conclusion**

In this case, applying a refined categorical approach would require us to hold, as common-sense dictates, that an individual who intentionally rams his car into another vehicle containing his children has committed a crime of violence. He pled guilty to the child endangerment offense on facts that proved his intention to threaten or use actual force against his children. While I agree with the result in our en banc decision in <u>Vargas-Duran</u>, unlike the majority, I would jettison that opinion's overly broad "any set of facts" formulation — which the <u>Vargas-Duran</u> majority did not actually apply to decide that case. Rather, consistent with <u>Taylor</u> and the law of other circuits, we should look to the facts contained in the underlying indictment and jury instructions to apply crime of violence enhancements like that before us. I respectfully dissent.

JERRY E. SMITH, Circuit Judge dissenting, joined by Judge Rhesa H. Barksdale:


I.

I respectfully dissent from the well-intentioned position taken by a majority of the judges. My disagreement is in regard not only to the result the majority reaches, but also to the manner in

which this court is handling its sentencing guideline jurisprudence.

The majority's result is intuitively absurd. It holds that a defendant who intentionally rammed his car into a vehicle that he knew contained his young children was not guilty of a "crime of violence." We are, of course, bound by the various definitions and explanations set forth in the applicable statutes and sentencing guidelines, from which we must discern the will of the drafters. Congress could, if it wanted to, define an ax murder as not a "crime of violence," and we would be bound to adhere to that definition.

Here, however, as I will explain, there is an easy path to reaching the correct answer in this case, which is that Calderon-Pena's crime is indeed a "crime of violence." There is, admittedly, a colorable argument to the contrary, and Judge DeMoss has ably articulated that explanation for the majority. But that does not justify the fact that the court has even taken this case en banc, when the panel had already carefully reconciled its result with our recent en banc decision in *United States v. Vargas-Duran*, 356 F.3d 598 (5th Cir. 2004) (en banc), and had issued s supplemental opinion on rehearing setting forth that explanation.

Some may view it as silly that a court of appeals takes sentencing guideline cases en banc at all. I do not go that far, for indeed there are times when conflicting caselaw needs to be

29

reconciled.  This is not one of them.

The en banc court is not, and should not be, primarily a court of error.  The decision to take a case en banc is a prudential one that should be based on a host of factors, including, among others, the importance of an issue, the expenditure of judicial resources, whether the issue creates a problem beyond the confines of the case at hand, and the degree to which the panel's result is perceived by some not only as wrong, but as so wrong that it effects a grave injustice or disrupts the court's jurisprudence in a significant way.

Even if, *arguendo*, the majority were correct in its result, the case does not satisfy the other criteria for en banc review. By taking this case en banc, the majority has created more questions than it has solved and has muddled our guidelines jurisprudence unnecessarily.  Given, however, that the case is now presented for decision by the en banc court, and that the majority has reached a demonstrably erroneous result, I will explain the flaws in its reasoning.

II.

As I approach the merits of the case, I first note my agreement with the majority's handling of the "elements" of an offense. The government urges that when recitations of particular violent actions are added to an indictment, the proof of those actions be-

30

comes "elements" of the offense for purposes of enhancement under the sentencing guidelines. Such an approach would undermine *Taylor v. United States*, 495 U.S. 575 (1990); as the majority notes, "the analysis of the statute would be superflous" under the government's theory. The "elements" of an offense are those enumerated in the statute of conviction, and no others.

I also agree with the majority's acceptance of the notion that a court may refer to charging papers to determine of which elements of an offense a defendant was convicted. *See Taylor*, *id.* at 578; *United States v. Landeros-Gonzales*, 262 F.3d 424, 426 (5th Cir. 2001). The "paring down" of statutes by reference to the charging papers has been applied by other circuits, including the First,[6] Seventh,[7] Eighth,[8] Tenth,[9] and especially the Ninth.[10]

---

[6] *See, e.g., U.S. v. Shephard*, 348 F.3d 308, 312-13 (1st Cir. 2003) (recognizing that *Taylor* allows that courts may look at the charging papers and jury instructions to identify the crime of conviction; noting that the First Circuit has approved "resort to pre-sentence reports but only to determine the character of the criminal offense for which the criminal was convicted (not whether violence was or was not used on the particular occasion) . . . where that determination cannot be made from the statutory language itself or from the charging documents" and those documents are reliable).

[7] *See, e.g., Flores v. Ashcroft*, 350 F.3d 666, 670 (7th Cir. 2003) (opining that "when one state-law offense may be committed in multiple ways, and federal law draws a distinction, it is necessary to look behind the statutory definition," and allowing examination of charging papers to determine the elements of a crime of which a defendant was convicted); *United States v. Howze*, 343 F.3d 919 (7th Cir. 1997) (same).

[8] *See, e.g., United States v. Menteer*, 350 F.3d 767, 770-71 (8th Cir. 2003) (allowing district court to look to presentence report's characterization of defendant's conduct, where defendant failed to

(continued...)

31

I depart from the majority's reasoning only at a later point. The pared-down statute of conviction provides: "A person commits an offense if he intentionally . . . by act . . . engages in conduct that places a child younger than 15 years in imminent danger of . . . bodily injury." This sufficiently describes the "attempted use of physical force" in satisfaction of the relevant crime of violence statute. U.S.S.G. § 2L1.2, application note 1(B)(ii)(I). In a nutshell, because the pared-down child endangerment statute requires that a defendant have intentionally created

_____

(...continued)
object to PSR's factual characterization of his conduct); *United States v. Valladares*, 304 F.3d 1300, 1303 (8th Cir. 2002) (stating that "when the statutory definition of a predicate offense encompasses conduct that may or may not be included in the applicable guideline, the sentencing court may look to the underlying charging papers and jury instructions to determine the elements of the crime which the defendant was convicted" (citation omitted)).

[9] *See, e.g., U.S. v. Venegas-Ornelas*, 348 F.3d 1273, 1275 (10th Cir. 2003) ("Although we may not consider the particular facts surrounding the conviction, if the statute reaches different types of conduct, we may look to the charging paper and judgment of conviction in order to 'determine if the actual offense the defendant was convicted of qualifies as a crime of violence'" (citing *Sareang Ye v. INS*, 214 F.3d 1128, 1133 (9th Cir. 2000)).

[10] *See, e.g., United States v. de la Fuente*, 353 F.3d 766, 770 (9th Cir. 2003) (holding that if a "statute reaches both conduct that would constitute a crime of violence and conduct that would not, we turn to a modified categorical approach, which allows us to examine documentation or judicially noticeable facts that clearly establish that the defendant's actual offense qualifies as a crime of violence" (citing *United States v. Sandoval-Venegas*, 292 F.3d 1101, 1106 (9th Cir. 2002) (same); *United States v. Hernandez-Valdovinos*, 352 F.3d 1243, 1247-48 (9th Cir. 2003); *United States v. Wenner*, 351 F.3d 969, 972 (9th Cir. 2003); *Lara-Chacon v. Ashcroft*, 345 F.3d 1148, 1154; (9th Cir. 2003); *United States v. Melton*, 344 F.3d 1021, 1024 (9th Cir. 2003); *United States v. Casarez-Bravo,* 181 F.3d 1074, 1077 n.1 (9th Cir. 1999)).

an *imminent* danger of bodily injury to another, he intended to use physical force on that person, even if that force was of a subtle and indirect nature.[11]  The majority is mistaken in concluding otherwise.

## A.

The majority states in conclusional fashion, "Clearly, the pared-down statute can be successfully prosecuted without proof of attempted use of force.  One can knowingly endanger without trying to make any bodily contact with the victim's person and without trying to inflict bodily injury on the person."  The majority emphasizes elsewhere that the statute can be violated without an attempt to cause "physical contact."

It a matter suitable for debate whether the child endangerment statute may be satisfied without a perpetrator's "trying to inflict bodily injury" on a victim.  Before addressing that issue, however, I must note that the majority goes too far in its mention of "bodily contact."

I accept that it is possible "knowingly [to] endanger" a person without trying to make any "bodily contact" or "physical contact" with him.  For instance, a person's body may be imminently endangered by poison left for him to consume, without the would-be

---

[11]  *See United States v. Vargas-Duran*, 356 F.3d 598, 606 (5th Cir. 2004) (en banc) (concluding that the crime of violence inquiry is limited to "[l]ooking only at the fact of [the defendant's] conviction and the statutory definition")

33

poisoner's intending to achieve "bodily contact" with his victim. But I cannot credit the suggestion that a perpetrator's making "bodily contact" with a victim is a requirement for the "physical use of force," or accordingly that a perpetrator's attempt to make "bodily contact" with a victim is a requirement for the "attempted use of physical force."

Rather, the "use of physical force" and "attempted use of physical force" under the crime-of-violence guideline should extend to cover those applications of force that are subtle or indirect, rather than only those embracing "bodily contact." This is a matter of common sense.

If a someone lures a poor swimmer into waters with a strong undertow in order that he drown, or tricks a victim into walking toward a high precipice so that he might fall, it is a poor excuse for the perpetrator to say, "Well, at least I didn't attempt to use physical force against my victim. I was only trying to kill or maim him!" To the contrary, the perpetrator has at least attempted to make use of physical force against the person of the target, either through the action of water to cause asphyxiation or by impact of earth on flesh and bone. However remote these forces may be in time or distance from the defendant, they were still directed to work according to his will, as surely as was a swung fist or a fired bullet.

This interpretation also is logical, given the sort of criminal statutes that might be considered "crimes of violence."

34

Numerous statutes covering crimes that most would naturally think to involve the "use" or "attempted use" of force may be satisfied by subtle and indirect force. Most would agree, for example, that an intentional battery statute requiring the actual injury of the victim describes the "use of physical force." As well, it should be uncontroversial that formulations of assault requiring an intent to injury of a victim should be considered to involve the *attempted* use of force.

But batteries and assaults punishable under such statutes can involve uses or attempted uses of physical force that are subtle or indirect. For example, a person may be indicted and convicted for Texas assault if he "intentionally . . . causes bodily injury to another, including the person's spouse." TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon 2003). The bodily injury need not result from a violent physical contact between the defendant and the victims; subtle or indirect means would do, whether by tricking a person into consuming poison, or luring him to walk off a cliff.

Likewise, the crime of murder in many states may be satisfied by subtle and indirect uses of force. A person may be indicted and convicted for Texas murder, for example, if he "intentionally or knowingly causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2003). Again, the defendant need never lay a finger on his victim. Though murder is, quite fortunately, enumerated as a crime of violence under the second prong of the rel-

evant violence definition, it would be absurd to believe that murder would not involve the "use of physical force"  *See* U.S.S.G. § 2L1.2, application note 1(B)(ii)(II).

Additionally, although murder is enumerated as a "crime of violence," attempted murder is not.  Attempted murder may be undertaken by other than attempts to cause "bodily" or "physical" contact, yet no court reasonably would hold that attempted murder is a crime that does not involve the "attempted use of physical force against the person of another."

Accordingly, the majority's insistence on "bodily contact" is serious error.  Physical forces, whether subtle and indirect, are physical forces nonetheless.

### B.

As for the majority's holding that one can knowingly create an imminent danger of another's physical injury without "trying to inflict bodily injury on the person," I disagree.  I also take issue with the majority's related conclusion:  "Creating a risk of injury, even when done knowingly or intentionally, is clearly not the same as using or attempting to use physical force against the person of another."  This latter statement might contain some truth, because people may not actually expect those harms that flow from *de minimis* risks they choose to create, but the majority ignores that the statute of conviction required not simply a "risk of in-

jury," but an "*imminent* danger of bodily injury"[12] (emphasis added).

An attempt is "the act or an instance at making an effort to accomplish something " BLACK'S LAW DICTIONARY 123 (7th ed. 1999). Thus, for example, an attempted crime is "an overt act that is done with the intent to commit a crime." *Id.* An attempted use of physical force, accordingly, is an overt act done with intent to use physical force. The pared down child endangerment offense requires just such an attempt.

It is axiomatic that people intend the likely results of their actions; after all, intention is "the willingness to bring about something planned or foreseen." *Id.* at 814. Therefore, when a person knowingly undertakes actions in order to create a "imminent danger . . . of bodily injury," he also demonstrates a willingness to bring about the foreseeable result of his actionsSSthat is, his use of physical force against the person of another to cause bodily injury.

---

[12] Thus, the majority's reference to holdings in the Second Circuit to the effect that "[t]here are many crimes that involve a substantial risk of injury but to not involve the use of force" is inapt. *See Dalton v. Ashcroft*, 257 F.3d 200, 207 (2nd Cir. 2001). Likewise, this court's effort in *United States v. Chapa-Garza*, 243 F.3d 921, 925 (5th Cir. 2001), to contrast conduct involving "a serious risk of physical injury" with conduct that presents "a substantial risk that the defendant will use physical force against another's person" is of little help here. *See id.* The *Chapa-Garza* court analyzed a different crime of violence guideline, and particularly a prong involving the creation of "substantial risk" of injury, rather than the attempted use" formulation at stake here.

This makes sense.  When a person intends to create an imminent danger of injury by such obvious means as ramming his car into someone else's, or less direct means such as by luring that person to an ocean undertow or placing deadly poison in his drink, he is actually attempting to control, and thus intentionally "use," physical force against that person, whether in the form of collision with a fast-moving automobile, water suffocating lungs, or cyanide disrupting metabolism.

Accordingly, Calderon was convicted of a "crime of violence" as described in § 2L1.2.  Because his statute of conviction required him intentionally to have exposed a person to a physical forces either created by him or made subject to his will, it described the "attempted use of physical force" against the person of another.

Thus, I respectfully dissent.

EMILIO M. GARZA, Circuit Judge, dissenting:

I write separately because I agree with both the "use of force" analysis in Judge Smith's dissent and with the interpretation of *United States v. Taylor*, 495 U.S. 575 (1990) in Judge Jones's dissent. I do not agree with the portions of Judge Jones's dissent that indicate that the majority opinion in *United States v. Vargas-Duran*, 356 F.3d 598 (5th Cir. 2004) (en banc), is correct. For the reasons expressed in my dissent in *Vargas-Duran*, I continue to believe that *Vargas-Duran* was wrongly decided. *See Vargas-Duran*, 356 F.3d at 610 (Garza, J. dissenting).