**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 02-20713

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JULIO CESAR RODRIGUEZ-DUBERNEY,

Defendant-Appellant.

Appeal from the United States District Court
For the Southern District of Texas, Houston

March 25, 2003

Before JONES, WIENER, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Appellant Julio Cesar Rodriguez-Duberney ("Duberney") pleaded guilty to one count of illegally reentering the United States after deportation in violation of 8 U.S.C. §§ 1326(a) and (b)(2). At sentencing, the district court applied a sixteen-level upward adjustment based on Duberney's prior conviction for a felony drug trafficking offense under the Travel Act. Duberney objected arguing that the court should only look at the elements of the prior offense and not the underlying conduct. The district court denied Duberney's objection and subsequently sentenced him to fifty-six months in prison and three years of supervised release. Duberney timely appealed his sentence to this Court.

## BACKGROUND

Duberney pleaded guilty to one count of illegal reentry into the United States. The Pre-Sentencing Report ("PSR") assigned Duberney a base offense level of eight in accordance with U.S.S.G. § 2L1.2(a). The PSR also assigned Duberney a 16-level upward adjustment to his offense level pursuant to § 2L1.2(b)(1)(A)(i), which provides, "If the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a drug trafficking offense for which the sentence imposed exceeded 13 months, . . . increase by 16 levels." Following an adjustment for acceptance of responsibility, Duberney's total offense level was 21, and he was in criminal history category IV. His Guidelines sentencing range was 57-71 months in prison and a two to three year term of supervised release.[1]

Duberney's prior conviction involved a violation of the Travel Act, 18 U.S.C. § 1952, which prohibits interstate travel and communication in aid of racketeering. In the prior conviction, Duberney had been part of a conspiracy to transport marijuana and cocaine across state lines. Though Duberney was originally indicted on a charge of conspiracy to possess marijuana and cocaine with intent to distribute, he was permitted to plead guilty to a violation of the Travel Act. The indictment in this prior conviction charged Duberney with interstate transportation in aid of racketeering "with the intent to promote cocaine and marijuana trafficking." Duberney was sentenced to 37 months' imprisonment

---

[1]At sentencing, the District Court gave Duberney a one month credit for time already served in custody of the INS, which explains his actual sentence which is 1 month below the guideline range.

for this prior offense.

In the present case's sentencing hearing, Duberney objected to the 16-level upward adjustment. Though he did not dispute the "underlying conduct" of his prior conviction involved drug trafficking, Duberney argued that under this Circuit's "categorical" approach to classifying offenses for Guidelines purposes, his prior § 1952 conviction did not qualify as a drug trafficking offense under § 2L1.2(b)(1)(A)(i). Duberney reasoned that because the Travel Act targets interstate or foreign travel "in aid of" several forms of "unlawful activity" - many of which do not involve drugs or drug trafficking - a Travel Act violation is not a "drug trafficking offense" as defined in the Sentencing Guidelines. He contended that he thus should not have received the 16-level upward adjustment.

The district court denied Duberney's objection. Though the district court acknowledged that a person could be convicted under § 1952 for unlawful activities other than drug trafficking, it noted that the elements of a § 1952 offense are somewhat determined by the type of racketeering enterprise being aided. The district court therefore concluded that because "the charge itself reflects a drug trafficking offense," his Travel Act conviction warranted the 16-level increase under § 2L1.2(b)(1)(A). The district court sentenced Duberney to fifty-six months in prison and three years of supervised release. Duberney timely appealed his sentence to this Court.

**DISCUSSION**

Did the district court err in concluding that Duberney's prior conviction warranted a 16-level upward adjustment?

This Court will uphold a sentence unless it is imposed in violation of law, is based on an erroneous application of the

3

Guidelines, or unreasonably departs from the applicable guideline range. *United States v. Guadardo*, 40 F.3d 102, 103 (5th Cir. 1994). The district court's application of the Guidelines is reviewed *de novo*, and its findings of fact are reviewed for clear error. *United States v. DeSantiago-Gonzalez*, 207 F.3d 261, 263 (5th Cir. 2000). The 2001 Guidelines apply to the instant case because Duberney was sentenced on June 17, 2002. *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

Duberney maintains on appeal that his § 1952 conviction is not a drug trafficking offense under § 2L1.2(b)(1)(A)(i). Duberney does not dispute that the underlying conduct in his § 1952 conviction did, in fact, involve the transportation of illegal drugs. He argues, however, that the district court should have taken a categorical approach to the classifying offense and that his § 1952 conviction does not qualify as a drug trafficking crime under such an approach because it is possible to commit a § 1952 offense that does not involve drugs. We are, therefore, left with question of whether or not the district court erred, as a matter of law, in looking to the conduct underlying Duberney's prior § 1952 conviction in applying § 2L1.2(b)(1)(A)(i).

Duberney argues that under this Court's decision in *United States v. Gracia-Cantu*, 302 F.3d 308 (5th Cir. 2002), we should employ a "categorical approach" to classify prior offenses for the purposes of § 2L1.2. In *Gracia-Cantu*, this Court held that the offense of "injury to a child" is not properly classified as a "crime of violence" for the purposes of § 2L1.2(b)(1)(A)[2] because

---

[2]The commentary to § 2L1.2 provides that an "aggravated felony" be defined under 8 U.S.C. § 1101(a)(43). Under that section, an aggravated felony includes a "crime of violence" as

4

the focus of that provision should be on the offense itself as defined under state law and not by facts underlying the conviction. Under Texas law, "injury to a child" encompasses both crimes of omission as well as violent crimes. *Id.* at 311-12. This Court concluded, therefore, that, regardless of the underlying facts, the offense of "injury to a child," by its nature, is not a crime of violence under §2L1.2, because it could be premised on an omission rather than on an overt violent act. *Id.* at 312-13. Duberney argues that the "categorical approach" this Court used in interpreting § 2L1.2(b)(1)(A)(ii) should be extended to 2L1.2(b)(1)(A)(i).

However, Duberney's reliance on *Gracia-Cantu* is misplaced. *Gracia-Cantu* was premised upon this Court's decision in *United States v. Chapa-Garza*, 243 F.3d 921 (5th Cir. 2001). *Gracia-Cantu*, 302 F.3d at 312. In *Chapa-Garza*, this Court noted that 18 U.S.C. § 16 (b) defines a "'crime of violence" as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.'" **Id.** at 923 (quoting 18 U.S.C. §16 (b)). The Court then concluded that:

> the words "by its nature" require us to employ a categorical approach when determining whether an offense is a crime of violence. This means that the particular facts of the defendant's prior conviction do not matter, e.g. whether the defendant actually did use force against the person or property of another to commit the offense. The proper inquiry is whether a particular defined offense, in the abstract, is a crime of violence under 18 U.S.C. § 16(b).

*Chapa-Garza*, 243 F.3d at 924 (citation omitted). Therefore, in

_____

defined under 18 U.S.C. § 16. The Court therefore analyzed what constitutes a "crime of violence" under § 16.

both *Gracia-Cantu* and *Chapa-Garza*, it was the use of the words "by its nature" that invoked a categorical approach by this Court. *See also **United States v. DeSantiago-Gonzalez***, 207 F.3d 261, 264 (5th Cir. 2000).

Duberney's enhancement was not due to a "crime of violence" offense but for a drug trafficking offense under § 2L1.2(b)(1)(A)(i). The commentary to the Guidelines defines a drug trafficking offense broadly as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 2L1.2, cmt. app. n. 1(B)(iii). No where does this definition use the words "by its nature" so as to invoke a categorical approach. We therefore decline to extend the *Gracia-Cantu* categorical approach to § 2L1.2(b)(1)(A)(i).

Furthermore, we find that Duberney's prior Travel Act conviction may be classified as a "drug trafficking offense" without elaborate consideration of his underlying conduct. As noted above, in Duberney's prior conviction, he was charged with, and pleaded guilty to, "interstate transportation in aid of racketeering with the intent to promote cocaine and marijuana trafficking." The district court had only to look at the charging indictment to find that the prior Travel Act violation was one involving drug trafficking.

In *Taylor v. United States*, the Supreme Court stated that such an approach is acceptable in a "narrow range of cases." 495 U.S. 575, 602 (1990). The Supreme Court went on to explain when such a

6

situation might arise:

> For example, in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

*Id.* We acknowledged *Taylor* in *United States v. Allen*, stating:

> We read *Taylor* as allowing the sentencing court to consider only the statutory definition of the offense, the charging paper and jury instructions. Any different rule raises the possibility of mini-trials to determine the facts underlying a prior offense. Such an "elaborate factfinding process regarding the defendant's prior offenses," is specifically barred by *Taylor*.

282 F.3d 339, 343 (5th Cir. 2002)(citation omitted). From *Taylor* and *Allen*, we therefore conclude that in the case of a statute such as the one at issue here, where the underlying conduct may include conduct that would make the defendant eligible for an enhancement, the district court does not err when it looks to the underlying indictment for guidance.[3]  Just as a district court could look to the indictment to see if a burglary was one that involved a building rather than an automobile, it can also look to the indictment to see if a Travel Act violation involved drug trafficking.  A jury was required to find drug trafficking in order to convict Duberney of the Travel Act violation, and there is no danger of the district court undertaking an elaborate fact-finding process in order to determine the nature of the defendant's underlying offense.

---

[3]This is in no way meant to alter this Court's decisions in *Chapa-Garza* and *Gracia-Cantu*, in which we have already held that the precise language involved in the definition of a "crime of violence" required a categorical approach.

7

## CONCLUSION

Having carefully reviewed the record of this case and the parties' respective briefing and for the reasons set forth above, we conclude that the district court did not err in concluding that Duberney's prior conviction justified a 16-level enhancement under U.S.S.G. § 2L1.2. We therefore AFFIRM the district court's decision.

**AFFIRMED.**