# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 26, 2007

Charles R. Fulbruge III
Clerk

No. 06-41491

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ALEJANDRO MAURICIO CARBAJAL-DIAZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, SMITH, and GARZA, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Alejandro Carbajal-Diaz appeals his sentence for unlawful reentry into the United States after deportation. Because the district court did not err in applying a "crime of violence" ("COV") sentence enhancement for a prior burglary conviction, we affirm.

I.

Carbajal-Diaz, an alien, pleaded guilty of aggravated felony burglary and misdemeanor sexual misconduct in Missouri in 2001 and was deported in 2005. While on parole for the burglary offense in 2006, he illegally reentered the United States and was arrested. He pleaded guilty of knowingly and unlawfully entering the United States after deportation for commission of an aggravated felony in violation of 8 U.S.C. § 1326.

The presentence report ("PSR") began with a base offense level of 8, reduced by three levels for acceptance of responsibility. Based on the Missouri burglary conviction, the report added a sixteen-level enhancement for conviction of a "crime of violence" pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii),[1] resulting in an offense level of 21. Because of his convictions and deportation, Carbajal-Diaz had a criminal history category of IV.

The offense level and criminal history category resulted in a sentencing guideline range of 57 to 71 months' imprisonment. Adopting the PSR's findings and considering the advisory guideline range and "the sentencing objectives of rehabilitation, incapacitation, retribution and deterrence," the district court imposed a within-guideline sentence of 60 months. Carbajal-Diaz appeals his sentence, principally claiming that the court should not have treated his burglary conviction as a COV.

II.

Under U.S.S.G. § 2L1.2, a crime is a "crime of violence" if it (1) has an element involving physical force or (2) falls under one of a variety of specific enumerated offenses,[2] one of which is "burglary of a dwelling." The government does

---

[1] The 2005 version of the Sentencing Guidelines was used.

[2] See U.S.S.G. § 2L1.2 cmt.1(B)(iii) (2005) ("'Crime of violence' means any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory
(continued...)

not contend that Carbajal-Diaz's prior burglary conviction had an element involving physical force, so the sole issue is whether the statute describes the enumerated crime of "burglary of a dwelling." In making that determination, we review de novo the district court's interpretation of the sentencing guidelines. United States v. Calderon-Pena, 383 F.3d 254, 256 (5th Cir. 2004) (en banc) (per curiam).

## A.

We begin with a review of the applicable law. Determining whether a crime is an enumerated COV entails a conceptual difficulty: With what level of specificity do we define the crime? At one end of the spectrum lie the circumstances of the crime as it was in fact committed, and at the other end lies the most general classification of the crime in the statute of conviction. Our approach to this challenge amounts to a three-step inquiry.

First, we employ a "categorical" analysis of the state criminal statute, looking to the elements of the crime as defined by that statute. Taylor v. United States, 495 U.S. 575 (1990); Calderon-Pena, 383 F.3d at 257. This approach defines the crime at the level of generality fixed by the statute of conviction without regard to the specific facts of the defendant's conduct. In defining the crime, we must "look only to the fact of conviction and the statutory definition of the prior offense." Taylor, 495 U.S. at 602; see also Calderon-Pena, 383 F.3d at 257. Criminal statutes often broadly encompass a range of different behaviors such that a statutorily-defined crime could be a COV if committed in one manner but not if committed in a different manner. Although looking to the specific circumstances might allow a more precise description of the crime, we have generally

---

[2] (...continued)
rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.").

resisted such a fact-intensive inquiry requiring endless mini-trials to determine what that conduct was.

Despite the general rule that a prior crime is defined categorically by the statute of conviction, we have nevertheless permitted some narrowing of the crime's definition based on specific facts contained in the charging papers. This narrowing analysis constitutes the second step of our inquiry; it proceeds differently depending on whether we are determining whether the prior crime falls under § 2L1.2's reference to other crimes with an element involving the use of physical force, or instead if we are determining whether the crime amounts to one of § 2L1.2's enumerated offenses. In both instances, we may look to the charging papers to narrow the definition of the crime; but in each respective instance we look for different things.

In Calderon-Pena, this court explained the narrowing analysis to be undertaken when assessing whether a crime has an element involving use of physical force. We relied heavily on § 2L1.2's explicit textual reference to "elements"[3] involving use of force, and we held that "a court may look to the indictment or jury instructions, for the limited purpose of determining which of a series of disjunctive elements a defendant's conviction satisfies." Calderon-Pena, 383 F.3d at 258 (internal quotation marks and citation omitted). In other words, "whenever a statute provides a list of alternative methods of commission . . . we may look to charging papers to see which of the various statutory alternatives are involved in the particular case." Id.

In Calderon-Pena, for example, the Texas child endangerment statute made it a crime "intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, [to] engage[ ] in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental

---

[3] The sentencing guidelines refer to "any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt.1(B)(iii) (2005) (emphasis added).

impairment." Id. at 256. We observed that this disjunctive list of elements "proscribes a range of conduct, from intentional acts that create a mortal danger to negligent omissions that risk mental impairment." Id. at 260. Specific facts in the indictment could thus be used "to narrow down the statutory options" so that the crime is defined as "knowingly . . . by act . . . engag[ing] in conduct that places a child younger than 15 years in imminent danger of . . . bodily injury." Id.

Crucially, however, the disjunctive statutory elementsSS"knowingly," "by act," etc.SSremain irreducible and cannot be further narrowed by the specific facts of the case. This approach takes judicial economy and the need for settled expectations as its animating principles, and it finds these principles rooted in § 2L1.2's choice of the word "element."[4]

Although we adopted a formalistic, element-by-element approach to crimes of violence involving use of force, we have taken a different approach to COV's based on enumerated offenses. When considering whether a crime constitutes an enumerated offense, § 2L1.2's reference to the whole crime rather than the particular "elements" has dictated a less formal and more functional narrowing analysis.[5] Here, in what we have dubbed the "common sense approach," specific facts contained in the indictment or jury instructions can be used more freely to

---

[4] "This rule springs directly from the language of the 'crime of violence' definition itself, which states that a 'crime of violence' is an offense that 'has as an element' the use of force." Calderon-Pena, 383 F.3d at 257. Explaining the consequences of defining the prior crime more narrowly than the statutory elements, the court observed, "Each conviction under the child-endangerment statute would then require its own individualized 'use of force' inquiry, asking whether a particular method of endangeringSSleaving a child in a hot car, leaving a child near a deep pool, denying medical treatment, and so on, ad infinitumSSinvolves force. This cumbersome approach would essentially excise the 'element' language from the Guideline." Id. at 257-58.

[5] In Calderon-Pena, 383 F.3d at 258 n.5, we noted, "Many sentencing provisions lack the 'as an element' language at issue here, and we have permitted broader uses of charging papers in such cases."

define the crime with a somewhat greater level of specificity.[6]

A court still cannot conduct a mini-trial to retry all the specific facts, but it can look to those facts contained in the charging papers and that are necessary to the verdict or the plea. The animating principle behind this approach appears to be fairness to the defendant: An indictment's stated facts can be considered in defining the crime, but only to the extent they were necessary to the verdict or plea. This allows a more specific "common sense" definition of the crime, while avoiding the prospect of endless dispute over the specific facts of that crime. The search for such facts ends with the charging papers, the plea or verdict, and the fact of conviction.[7]

We elaborated on this approach in United States v. Rodriguez-Duberney, 326 F.3d 613, 616-17 (5th Cir. 2003), in which we considered whether an indictment could be used to determine that a Travel Act violation was in fact a drug trafficking offense subject to guideline enhancement. We held that the district court could "look to the indictment to see if a Travel Act violation involved drug trafficking," id. at 617, reasoning that "[a] jury was required to find drug trafficking in order to convict Duberney of the Travel Act violation, and there is no danger of the district court undertaking an elaborate fact-finding process in order to determine the nature of the defendant's underlying offense," id.

---

[6] See United States v. Mendoza-Sanchez, 456 F.3d 479, 482 (5th Cir. 2006) (internal citation omitted) ("Under the [Calderon-Pena] approach, if the statute of conviction contains a series of disjunctive elements, this court may look to the indictment and, if necessary, the jury instructions, for the limited purpose of determining which of a series of disjunctive elements a defendant's conviction satisfies. However, this court uses a 'common sense approach' to determine whether a defendant's offense qualifies as an [enumerated offense]."); United States v. Izaguirre-Flores, 405 F.3d 270, 273-75 (5th Cir. 2005) ("Our analysis is not . . . contingent on whether a particular element is encompassed within the underlying statute. Thus, a common sense approach to the question satisfies us here."). Although we have often made reference to this "common sense" approach, we have not precisely explained what the approach actually entails and how it differs from the approach taken in our "elements" cases.

[7] In pleaded cases, the Supreme Court has also permitted looking to facts admitted in the plea colloquy and plea agreement. Shepard v. United States, 544 U.S. 13, 26 (2005).

This common sense approach to enumerated offenses, permitting us to look beyond the statutory elements to necessary facts contained in the indictment, also accords with the Supreme Court's approach to similar enumerated offenses triggering enhancement under the Armed Career Criminal Act. In determining whether a prior burglary amounted to an enumerated offense of "generic burglary" (deemed to exclude burglary of an automobile), the Court offered an illustration:

> [T]he sentencing court [may] go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary. For example, in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

Taylor, 495 U.S. at 602.

The Court reaffirmed this approach and clarified that it applies to guilty pleas as well as jury verdicts. Where a prior conviction results from a guilty plea, a court may look to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant." Shepard v. United States, 544 U.S. 13, 26 (2005). The prior crime can be defined by facts contained in those documents to the extent the "prior conviction 'necessarily' involved (and a prior plea necessarily admitted) facts equating to [the enumerated crime]." Id. at 24.

The second step of our COV inquiry therefore entails using the charging papers to narrow the statutory definition of the prior crime. If determining whether that crime has an element involving use of force, we look with a squint to the charging papersSSonly to determine which of a series of disjunctive statutory elements the crime implicated. But if determining whether the crime

7

amounts to an enumerated offense, we look with wider eyes to the charging papers, to determine which of the crime's underlying facts were necessary to the plea or verdict.

Once the crime has been thus defined, we proceed to the third and final step of our inquiry, to compare the definition of the crime to the definition of the enumerated crime of violence offense. In doing so, we understand the enumerated offense "according to its generic, contemporary meaning, and should rely on a uniform definition, regardless of the labels employed by the various States criminal codes." United States v. Dominguez-Ochoa, 386 F.3d 639, 642-43 (5th Cir. 2004).[8] If the crime fits the "generic, contemporary" meaning of the enumerated offense, it constitutes a COV triggering sentence enhancement.

## B.

We now turn to the facts. Carbajal-Diaz contends Missouri's burglary statute sweeps more broadly than do the sentencing guidelines, criminalizing actions that do not amount to COV's. To be convicted of burglary in Missouri, Carbajal-Diaz maintains, one need not necessarily commit "burglary of a dwelling," the enumerated COV offense contained in the guidelines. Carbajal-Diaz argues that because his conviction could be based on burglary of structures other than dwellings, it cannot trigger a COV enhancement for "burglary of a dwelling."

The Missouri statute under which Carbajal-Diaz was convicted defines burglary as entering or remaining in "a building or inhabitable structure,"[9] and

---

[8] See also Izaguirre-Flores, 405 F.3d at 275 ("'ordinary, contemporary, [and] common' meaning") (quoting United States v. Zavala-Sustaita, 214 F.3d 601, 604 (5th Cir. 2000)); United States v. Murillo-Lopez, 444 F.3d 337, 339 (5th Cir. 2006) (same); Taylor, 495 U.S. at 590-99.

[9] The full statute provides,

(continued...)

it defines "inhabitable structure" to include any structure "where any person lives or carries on business or other calling," "where people assemble for purposes of business, government, education, religion, entertainment or public transportation," or "which is used for overnight accommodation."[10] Carbajal-Diaz correctly observes that Missouri's statute sweeps broadly and includes structures such as businesses and other buildings that may not be considered "dwellings."[11]

The indictment to which Carbajal-Diaz pleaded guilty, however, allows us to narrow the broad definition of the burglary offense. It reads in relevant part,

---

[9] (...continued)

1. A person commits the crime of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, he or another participant in the crime:

(1) Is armed with explosives or a deadly weapon; or

(2) Causes or threatens immediate physical injury to any person who is not a participant in the crime; or

(3) There is present in the structure another person who is not a participant in the crime.

MO. ANN. STAT. § 569.160 (West 1997).

[10] The full statute provides,

(2) "Inhabitable structure" includes a ship, trailer, sleeping car, airplane, or other vehicle or structure:

(a) Where any person lives or carries on business or other calling; or

(b) Where people assemble for purposes of business, government, education, religion, entertainment or public transportation; or

(c) Which is used for overnight accommodation of persons. Any such vehicle or structure is "inhabitable" regardless of whether a person is actually present.

MO. ANN. STAT. § 569.010(2) (West 1997).

[11] See, e.g., United States v. Rodriguez-Rodriguez, 388 F.3d 466, 467 (5th Cir. 2004) (finding "burglary of a building" is not an enumerated COV offense).

9

> [O]n or about June 11, 1997, in the County of Jackson, State of Missouri, the defendant knowingly entered unlawfully in an inhabitable structure, located at 206 West 34th Street, Apartment 2E, Kansas City, Jackson County, Missouri, and possessed by Veda R. Shoemake, for the purpose of committing stealing therein, and while in such inhabitable structure there was present in such structure Olivia Shoemake, a person who was not a participant in the crime.

(Emphasis added.) Carbajal-Diaz's guilty plea thus constitutes an admission that the specific structure he burglarized was "an apartment" that was "possessed by Veda R. Shoemake."

Despite the broad sweep of the burglary statute, we can narrow Carbajal-Diaz's offense to burglary of an apartment possessed by an individual. Carbajal-Diaz, however, contends that even this narrow crime remains broader than the enumerated offense of "burglary of a dwelling," because an apartment is not necessarily a dwelling. To support this claim, Carbajal-Diaz points to a handful of Kansas City consulting, massage, and nail salon businesses that happen to be located in apartments.

We have concluded that "[a]n apartment is designed for human habitation and is therefore within the meaning of a 'dwelling' for purposes of 'burglary of a dwelling' as used in the Guidelines."[12] We need not go that far here, however, because it is undeniable that the apartment at issue in the instant case was not only intended to be, but indeed actually was, "possessed" by a person.

The fact that a few people in Kansas City may run small businesses out of apartments does not necessarily, or even probably, mean that the apartments are not also used as dwellings.[13] Although one could conceivably run a small

---

[12] United States v. Stewart, 208 Fed. App'x 291, 292 (5th Cir. 2006) (stating that prior crime amounted to burglary of a dwelling, despite broad burglary statute, where indictment indicated that defendant had burglarized an apartment), cert. denied, 127 S. Ct. 1845 (2007).

[13] In determining whether a crime amounts to an enumerated offense under the Armed Career Criminal Act, the Supreme Court has required "more than the application of legal imagination to a state statute's language." Gonzales v. Duenas-Alvarez, 127 S. Ct. 815, 822
(continued...)

business out of a home, we have deemed a home to be per se a dwelling. Mendoza-Sanchez, 456 F.3d at 483.

Accordingly, the enumerated offense of "burglary of a dwelling" encompasses Carbajal-Diaz's prior crime, defined in narrowed terms as "burglary of an apartment." Because the burglary indictment specified burglary of an apartment, and because the apartment in question is a dwelling, the district court did not err in applying the COV enhancement.[14]

### III.

Carbajal-Diaz raises two additional objections to his sentence. He contends that his within-guidelines sentence results from an unconstitutional "presumption of reasonableness" and that his conviction under 8 U.S.C. § 1326(b) is unconstitutional in light of Apprendi v. New Jersey, 530 U.S. 466 (2000). He raises both claims to preserve them for future review but concedes that they are foreclosed by existing circuit and Supreme Court precedent.[15]

The judgment of sentence is AFFIRMED.

---

[13] (...continued)
(2007). Rather, a "realistic probability, not a theoretical possibility," is required. Id.

[14] We have taken into consideration United States v. Castillo-Morales, 2007 U.S. App. LEXIS 25997 (5th Cir. Nov. 8, 2007), which deals with "burglary of a dwelling" under Florida law. Nothing in that opinion changes or affects our reasoning or result.

[15] See United States v. Mares, 402 F.3d 511 (5th Cir. 2005) (establishing presumption of reasonableness); Rita v. United States, 127 S. Ct. 2456 (2007) (affirming use of presumption of reasonableness); Almendarez-Torres v. United States, 523 U.S. 224 (1998) (holding that prior conviction under § 1326(b) need not be proven to jury); United States v. Garza-Lopez, 410 F.3d 268 (5th Cir. 2005) (recognizing that Almendarez-Torres remains binding in spite of Apprendi). This court has held that the continued efficacy of Almendarez-Torres is "fully foreclosed from further debate." United States v. Pineda-Arrellano, 492 F.3d 624, 625 (5th Cir. 2007), petition for cert. filed (Aug. 28, 2007) (No. 07-6202).